# CHARLESTON.

STATE to Use of BURT *v.* ALLEN *et al.*

## Decided April 21, 1900.

1. RESIDENT'S REMOVAL—*Intent—Attachment.*

    If a resident of this State, with fixed, set intention to remove to another State, and there reside, in pursuance of such intention goes out of this State, he is, within the meaning of the attachment law, a non-resident of this State directly he begins the removal of his person from the place of his residence, even before he gets outside the state, and, to constitute him a non-resident, he need not acquire either a domicile or residence in another state. (p. 155).

2. NON-RESIDENT—*Exemption Laws.*

    Non-residence, within the meaning of the law exempting personal property to the value of two hundred dollars from legal process, has the same meaning as non-residence under the attachment law. (p. 156).

3. JUSTICE'S BOND—*Sureties—Liability.*

    A justice of the peace and the sureties in his bond are liable under it for double the value of exempt property sold by a special constable under legal process issued by such justice. (p. 161).

4. WHO MAY CLAIM EXEMPTION—*When.*

    A husband or parent entitled to claim the exemption of personal property to the value of two hundred dollars as exempt from legal process may claim such exemption at any time before the sale of the property under such process begins, if then a resident of this State; and, though he was not such resident at the date of the levy under such process, yet if he is *bona fide* such resident before the sale begins, or *bona fide* resumes residence in this State, which had once existed, but was lost at the date of such levy he may claim such exemption. (p. 162).

5. DECLARATION—*Damages—Exemption Property.*

    In a declaration for damages for the sale of property under attachment exempt by law (chapter 41, section 23, Code), it is not necessary to aver that the attachment was not upon the ground of non-residence (p. 163).

Error to Circuit Court, Ohio County.

Action by the State to use of Louis Burt, against James Allen and others. Judgment for plaintiff, and defendants bring error.

*Reversed.*

CALDWELL & CALDWELL, for plaintiffs in error.

FRANK C. COX, W. C. MEYER, and FRANK W. NESBITT, for defendant in error.

BRANNON, JUDGE:

F. A. Blum sued Louis Burt before a justice of Ohio County, and sued out an attachment, which was levied on Burt's goods and chattels. Burt claimed that the property levied upon was exempt under section 23, chapter 41, Code, exempting, in favor of a husband or parent, personal property of two hundred dollars in value; but the constable sold the property, disregarding Burt's claim of exemption. The constable was one specially deputed by the justice in the case, not a regular bonded constable. Burt returned to the State before the sale. After the sale of the property Burt brought this action in the circuit court of Ohio County against James Allen, the justice, who issued the attachment, and the sureties in his official bond for damages for such sale, and the action resulted in a verdict in favor of Burt for double the value of the property attached and sold, and thereupon the defendants sued out this writ of error to the judgment rendered upon the verdict.

There are some very troublesome, nice questions, in the case, about which different minds might readily differ. Burt, as the defendants claim, having had a domicil and residence in Ohio County, abandoned the same and with his wife and children left the state with the intention of remaining away, and thus became a non-resident, and not entitled to the exemption. Burt, on the other hand, claims that he never became a non-resident, and did not leave the State with the fixed and settled intention of remaining away, but that his remaining away was dependent, in his mind, upon his success in procuring employment abroad. A question material in the case is whether he was a non-resident, in a legal point of view, when the attachment was sued out and levied. The case in this respect in this Court turns on instructions given and refused. The defense contends that the very moment when a man, with fixed intent to leave this State, and his residence in it and to reside in another State, begins his removal, he is a non-resident within the meaningg of the attachment law. With this view of the law the defendants asked for, but were refused, the following instructions: "If the jury be-

lieve from the evidence that Louis Burt, the plaintiff, left the State with the intention of changing his residence to Buffalo, New York, and that while he was going out of this State pursuant to such intention, his property was attached and sold, as stated in the evidence, he was not entitled to claim, as against such levy, an exemption as a husband and parent residing in this State, and in such case the jury should find a verdict for the defendant." "If the jury believe from the evidence that the plaintiff, Louis Burt, left the State with the intention of removing his residence to any place outside of the same, he became a non-resident of the State as soon as as he started on such removal and to make the same." The court gave for the plaintiff the following instruction bearing on the point now under consideration: "The court instructs the jury that a domicil once acquired is presumed to continue until a change in fact and in mind is shown. It is presumed to continue until another is acquired by actual residence with the intention of abandoning the former one, and the burden of proof lies on the party who asserts the change."

Under our attachment statute giving an attachment on the ground that a party "is a non-resident of this State," does a person become a non-resident the very instant he starts upon his removal with fixed intention of abandoning his residence in this State and residing in another State? There must be two things to change a man from a resident to a non-resident, namely, *intent* and *act*. What he does must be *animo et acto,* that is by act and with intent. Mere intent to remove will not alone do; there must be, in addition to intention, an act in the way of consummating that intention. The intention must be to change his residence from this State to residence out of this State. Mere going away temporarily, or without set purpose to abandon the former residence here, is not enough; it must be with fixed and definite design to give up residence here and assume one outside of the State. So much for the intention. Next as to the act of removal. What will be enough as an act to make the party subject to attachment? Must he have crossed the state line in the act of removal? Must he not only have crossed the state line, but assumed or taken up an actual residence beyond that line? Or is he a non-resident from the point of time when, with such intention of change of residence, he begins his journey, though he has not reached the state line?

The authorities differ on this point, and the question. in principle is close. Shinn on Attach., s. 96, says: "While one may by the act of removal from the state of his former home, with the intention of acquirng a home elsewhere, become a non-resident in the state of his former residence, yet it is the general rule that he does not become such a non-resident until he has acquired a new residence or place of abode with the intention of remaining in the state to which he has removed." Drake on Attach., s. 64, does not taken a position. He puts the question, "When an individual departs from his place of abode in one state, with the intention of taking up his residence in another state, at what point of time is he to be regarded as a non-resident of the state? Can he be so considered before he passes the boundary of that state?" Drake does not definitely answer; but he says, "But a mere purpose to change residence, though evidenced by acts of the removal of the party's property, will not make him a non-resident of the state from which he purposes to depart, until he shall have begun, at least, the removal of his person."

This indicates that Mr. Drake thinks that the party becomes non-resident the moment he begins the removal of his person.

Wade, Attach. s. 78, does not decide the point definitely as to whether the person must have passed the state line; but Mr. Wade takes the position that it is not necessary, in order to make one a non-resident of a state that he shall have acquired a residence elsewhere. Waples Attach. s. 46, evidently inclines to the view that the party is a non-resident the instant he begins his departure. He says: "As previously remarked in another connection, one immediately becomes a non-resident if he leaves his state with the design of becoming such, though the design has been held not to be decisive on this question until accompanied with the act of leaving; until he has passed beyond the state bounds. But if he has broken up his home, so that process can no longer be served there and be binding upon him, must his creditor be confined to personal service upon his debtor as the only means of reaching him? The case is not that of an absconding debtor; the plaintiff cannot truthfully set up the ground, in his affidavit, that the defendant is running away to avoid process, concealing himself, hiding his goods, &c., in fraud of creditors. The defendant avowedly means to abandon his residence, which he may lawfully do, and has broken up his home, and is openly traveling towards the state bounds to depart permanently. Why

should not the extraordinary process be invokable on the ground of non-residence." I have come to the conclusion that Mr. Waples is right as an original question. But it is not an original question with us. I believe that the case of *Clark* v. *Ward*, 12 Grat. 440, can be defended on logical grounds, as an original proposition. It may be, perahps, that the preponderance of authority is against it, but that is doubtful. Amid conflict, of course we must follow that case, unless it be manifestly wrong and unworthy to be followed, dangerous and hurtful as a rule for the future, as I do not think it is. That case holds that, "Ward, living in Virginia, determines to remove to another state and in pursuance of that purpose, leaves the place where he has resided, and proceeds directly to the place where he intends to reside. He is a non-resident of the state in the sense of the attachment law directly he commences his removal, and before he gets beyond the limits of the state." The opinion in the case is wholly unsatisfactory as containing no *rationale*. In *Moore* v. *Holt*, 10 Grat. 289, Judge Lee, whose opinion goes very far, expressed the opinion that under a statute giving attachment against persons "out of the country" that "it might be held, upon an equitable construction of this statute, that where a debtor has actually left his usual place of abode and set off for a distant state, with the intention not to return to his residence, but in future to reside out of the state, an attachment sued out after his departure might be sustained, although it chanced he had not actually passed the state line at the time the subpoena issued." Upon this subject as an original question I am led to the conclusion that the case of *Clark* v. *Ward* is right largely by the consideration that the reason and purpose of giving an attachment against a non-resident is the inability to serve process upon him for judgment in the ordinary course. A party leaves the place of his residence to go to another state. How can you serve process upon him? The creditor does not have to follow him on an express train or with a fleet horse to serve him with process before he gets to the state line. He has abandoned his usual place of abode, leaving no member of his family there upon whom process could be served. What is the creditor to do? Where is his remedy, unless he can resort to the property left within the state by the process of attachment? His debtor may sell it the next day. The object of the law is to give the creditor recourse at once by attachment to the property as his only security. Waples on attachment, s. 48 says: "Only by his property

can a non-resident debtor be reached and made to pay. If he is temporarily present a summons may reach him, to be sure; but of what avail would that be if his property is not attached? * * * * * He could readily return to his home and take his property with him, so that there would be nothing left within the jurisdiction upon which the judgment could be executed. The necessity, therefore, for the use of the writ of attachment, by which his property is held under a hypothetical lien till judgment, is obvious though the non-resident debtor be personally served with the summons. Ordinary process in such case would not prove effectual; hence the extraordinary is authorized." Now, I say that the reason as given in the books for the attachment is, generally speaking, because by reason of the debtor's absence from his usual place of abode and his abandonment of it, service of process and ordinary procedure are prevented. Such being the reason for the allowance of an attachment against a non-resident, it applies as well the moment he commences his journey as after he crosses the state line. He is not at home to be served with process and for judgment. The creditor has no safety but to seize his property by attachment. It was error to refuse the two instructions above quoted asked by the defendants. It logically follows that it was error to give for the plaintiff the instruction above quoted, because it demanded that before Burt could become a non-resident, he must not only have crossed the state line, but must have acquired a residence in another state; indeed he must have acquired a domicil there. Under *Clark* v. *Ward* he need not have acquired either domicil or residence in another state to be a non-resident of this State.

The said instruction given for the plaintiff speaks of a domicil, not residence. At least, it tells the jury that Burt's domicil in this State continued until he acquired another by actual residence, with the intent of abandoning his former domicil. This instruction may be interpreted to mean that he never would become a non-resident of this State until by such actual residence in another state as would constitute domicil there. He had acquired an actual domicil in that other state. This puts **too** severe a test of non-residence in this State. It requires residence abroad amounting to actual domicil. A man may be a resident of one state without having actual domicil there, and if he is a resident only of another state, he is not a resident of this State, as all the books concede. But, under *Clark* v. *Ward,* he need

not have even residence in another state, much less domicil, to be a non-resident of this State. There is a difference between domicil and residence. "Residence is used to indicate the place of abode, whether permanent or temporary; domicil denotes a fixed, permanent residence, to which, when absent, one has the intention of returning." 10 Am. & Eng. Ency. L. (2 Ed.) 8. A man may have a residence in one place, a domicil in another. "Domicil is composed of two elements, residence and intention, and both of these must concur. Residence in a place without the requisite intention of remaining will not suffice to give one a domicil, nor will an intention to change one's domicil, unaccompanied by actual removal, result in a change of domicil." 10 Am. & Eng. Ency. L. (2 Ed.) 15. Domicil means more than residence. It imports residence and fixed intention to remain there. A man may be a resident of a locality, without having his domicil there. He can have only one domicil at the same time, though he may have more than one residence. *Long* v. *Ryan,* 30 Grat. 718; *White* v. *Tennant,* 31 W. Va. 790. I repeat that this instruction, in requiring such residence abroad, as amounts to a domicil abroad, to constitute a man a non-resident of this State makes too high a test of non-residence in this State. The question of domicil is not necessarily involved in deciding whether a man is a non-resident, is not decisive of it. "In determining whether a debtor is a resident of a particular state, the question as to his domicil is not necessarily always involved; for he may have a residence which is not in law his domicil. Domicil includes residence, with an intention to remain; while no length of residence, without intention of remaining, constitutes domicil." Drake Attach. s. 58. It is not true that before one becomes a non-resident of one state, he must have actual residence in another. If the question were, whether a man who had a domicil in one state, had lost it, then whether he had such actual residence in another state as gives domicil there, the question of actuality of residence in the second state would be very material; but that would be upon the question of domicil, that is loss of domicil in the first state; but we are on the question of loss of residence. Wade Attach. s. 78. A man's domicil is presumed to continue, until another is taken up; but that is not the question here. Thus I do not see how we can sustain the instruction above quoted given for the plaintiff. Where a man abandons a domicil in one state and goes into another to reside,

the loss of domicil in the former state shows likely a loss of residence there also. So the assumption of a new domicil loses the former one, and may tend to show also the cessation of residence in the state of the former domicil, though not conclusively showing it. Domicil may throw light on the question of residence; but to be a non-resident of one state, or rather to change and become a non-resident of one state, it is not necessary that the person should so reside abroad as to have a domicil there. I have considered non-residence under the attachment law, though this is an action for damages for selling property exempt under chapter 41, section 23, Code; but I think when we have ascertained who is a non-resident under the attachment law, we have also ascertained who is a non-resident under said exemption statute. Non-residence under both statutes means the same. A person who as a non-resident is liable to attachment, is not entitled to claim the exemption, because he is a non-resident.

Complaint is made that the court instructed the jury that under certain circumstances the jury should find for the plaintiff double the value of the goods sold from Burt. The Code, chapter 50, section 31, says that, "the justice * * * * shall with his sureties be liable on his official bond for any neglect of duty, default or misconduct of such person (special constable) in the matter for which he was deputed." And in chapter 41, section 25, the Code says: "And any officer who shall sell any property so claimed as exempt * * * * shall forfeit to such debtor double the value of the property so sold, which forfeiture may be recovered from the officer and his sureties in his official bond."

It is contended that the latter statute is a penal statute, and that it must be strictly construed, as it involves the idea of penalty and punishment for the performance of an unlawful act, on principles stated in *Hall* v. *N. & W. R. R. Co.,* 44 W. Va. 36; and that, therefore, under strict construction, the statute cannot be made to apply to the justice in this case and his sureties, as sureties are looked upon with favor, and are bound only by the letter of their bond, and their liability is not to be extended by implication. It is contended that only the value of the property, not double its value, could be found. I do not think this contention is sustainable. When the bond of the justice was executed the law gave damages of double the value of property exempt by law for its sale, and made the official bond of an officer liable therefor. The sale of it contrary to law would be misconduct in

the officer, misuse of the power of his office; and the law also declared that if the justice selected, of his own choice, a person to act as special constable, to perform the same duties as a regular constable, he should be liable for the misconduct of such special constable. It does not seem reasonable that one man, whose exempt property is sold, should be entitled to recover double its value, when sold by a regular constable, while another man for the like act should recover only half. Rather should we not say that taking these several statutes together uniformity ·was designed? They were all in force when this· bond was given, and in *State* v. *Nutter,* 44 W. Va. 385, the doctrine is stated that while sureties stand on the leter of their contract, the law at the time of the contract is part of it, and if it gives to the contract a certain legal effect, that law is as much a part of the contract as if incorporated in it, and the sureties in the bond are bound according to such law. This double recovery is only damages; the statute has only doubled what was damages. They need not be sued for as a penalty, nor claimed as such in a declaration. The statute simply imposes that recovery as damages in the given case, the *quantum* of damages. I see no error in this feature of the instruction complained of.

Another feature ·of that instruction that is complained of, is that which told the jury that if Burt was a husband and resident of this State on the day of the sale of the property, he might claim his exemption at any time before the sale. The contention of the plaintiff in error is, that to claim the exemption Burt must have been a resident of the state at the date of the levy. No authority is cited for this proposition. The authorities hold that the exemption in favor of a poor debtor may be claimed up to the begining of the sale. Waples Homestead & Exemp. 777, 884. That, however, is not exactly the question in this case. Unquestionably a debtor, about whose residency there is no question, may claim his exemption at any time before sale; but in this case it is claimed that Burt held the *status* of non-resident on the date of the levy, and that right then vested in the creditor, and that even if Burt after that date returned to West Virginia and resumed his residence here *bona fide,* he could not claim this exemption. I do not so see it. That exemption statute must be liberally construed to accomplish its object, which is for the protection and benefit of a poor debtor and his helpless family, to give them the bread of life and a pillow whereon to lay the head,

to save them from destruction and absolute want. If the party be a resident of the State before his title to the property is absolutely gone by sale, the policy and purpose of the law demand that it shall be saved to him, as well as if he had never been out of the State. I concede that if the question were only whether the debtor was a resident of the State at the date of the levy, and he was not such resident then, that his after return would not abate the attachment or levy; but that is not the question. The question is whether he was a *bona fide* resident at the date of the sale. If he was, the statute of exemption comes to his relief.

It is claimed that the court erred in overruling a demurrer to the declaration. The reason given is that the declaration does not show on what ground the attachment issued, and should have shown that it was not issued on the ground of Burt's non-residence; for that if it was issued on the ground of non-residence Burt was compelled, before suing for damages, to controvert the existence of that ground, and not doing so, the fact of non-residence is established, and the declaration failing to negative that fact, all that it contains may be true, and yet the defendants not liable. If the defendant, Burt, in that action had been served with process or appeared, I do not say how far the fact of non-residence would be established so as to bar an action for the sale of the property; but it does not appear that he was served with process or appeared in the action, and its record does not establish the fact of non-residence conclusively against him. Moreover, if he was a non-resident up to the date of the judgment, but was a *bona fide* resident before actual sale, he would be entitled to claim the exemption. If he was a resident, then, it was enough.

I think that the instruction that in ascertaining the intention of Burt in leaving the State to go to Buffalo, N. Y., the jury was entitled to consider all of the evidence from which any inference may be drawn, cures any error that may exist from the refusal to give the instruction marked 7, p. 91 printed record. I see no objection to that instruction; but the court committed no error in refusing it, for the reason that it is useless and improper to give different instructions announcing the same legal point merely differently worded.

The assignment of error as to the rejection of the evidence of Richard Boecker is not tenable, because relating merely to an imperfect local custom; and, moreover, the answer expected is not given.

The assignment of error as to evidence of F. A. Blum is not well taken, because expressive of the witness' mere opinion.

The exclusion of the evidence of William E. Blum, which is assigned as error, is not error, because it was proposed to give merely Blum's construction or inference from the language of Burt.

For these reasons we find no error, except as to the three instructions, above quoted, but because of error as to them we reverse the judgment, set aside the verdict and grant the defendants a new trial.

*Reversed.*