# CHARLESTON

## BROWN *v.* BECKWITH.

### Submitted June 15, 1905.   Decided October 24, 1905.

1.  PERSONAL PROPERTY—*Exemption—Removal from State.*
    A person who has acquired, under the provisions of chapter 41 of the Code of 1899, the right to have personal property exempted from forced sale, does not forfeit it, on the ground of non-residence, until he begins to remove his person from his place of abode in this State to another state or country, with intent to fix his residence in such other state or country, although he may intend to leave the State permanently and has made complete preparation so to do and delivered his personal property and effects for shipment to a point outside the State. (p. 142.)

2.  SECURITY FOR COSTS—*Non-Residency—Res-Judicata.*
    A finding of non-residence on a suggestion and motion to require security for costs in a pending action, is not *res judicata* in another action between the same parties. Such proceeding is a collateral one, not reaching the merits of the case. (p. 144.)

3.  EXEMPTION LIST, FORM OF.
    An exemption list and claim, irregular in form, considered and pronounced sufficient. (p. 144.)

4.  PERSONAL PROPERTY—*Attachment—Exemption—Process.*
    An order of attachment is process within the meaning of sections 23 and 24 of chapter 41 of the Code, against which the right to exempt personal property may be exercised. (p. 145 )

Appeal from Circuit Court, Wood County.

Bill by Minnie Brown against B. F. Beckwith, constable, etc., and others. From a decree dissolving an injunction, plaintiff appeals.

*Reversed and Injunction Perpetuated.*

WALTER E. McDOUGLE, for appellant.

H. B. DODGE and L. R. VIA, for appellees.

POFFENBARGER, JUDGE:

Minnie Brown complains of a decree of the circuit court of Wood county, dissolving an injunction by which she attempted to prevent the sale of certain personal property claimed by her as exempt under the provisions of sections 23 and 24 of chapter 41 of the Code, and dismissing her bill.

The property consisted principally of household goods, and B. F. Beckwith, constable, was proceeding to sell the same under orders of a justice of the peace in attachment proceedings, instituted by three several creditors of the plaintiff, Samuel L. Koonse, Samuel Cross and A. E. Beatty. The attachments were levied on the 9th day of December, 1902, exemption claims were delivered to the officer on the 13th day of December, 1902, judgments were rendered and orders of sale made on the 18th day of December, 1902, and on said last named day the debtor served on the constable written instruments, demanding the release of the property, notifying him, that, in case of his refusal to do so, she would claim the damages allowed by law for detention thereof. By some collateral proceedings, which need not be here detailed, action was delayed so that the time fixed for sale was the 5th day of March, 1903, on which day a preliminary injunction was awarded on the plaintiff's bill against the justice, constable and creditors, restraining the sale. Answers were filed by the defendants, depositions were taken and filed, and, on the 20th day of August, 1903, the order complained of was made and entered.

The defense relied upon mainly is the alleged non-residence of the plaintiff at the time she presented her claim of exemption. She had occupied as tenant a certain house in the city of Parkersburg, from which, on the day on which the actions were commenced and her property seized, she had removed all her property and effects, including her wearing apparel not in actual use, to the wharfboat at said city and had them consigned to herself at Marietta in the state of Ohio and had vacated the house in which she had resided. She testifies that she staid at the Dewitt hotel in Parkersburg on the night of the day on which her property was sent to the wharfboat and levied upon, and later, went to the residence of a Mrs. Core, in Parkersburg, with whom she staid for some time, and then went to another place in said city. She denies that she ever had any intention of leaving the city, and explains the shipment of her property by saying she had rented it to certain persons in Marietta. In addition to the fact of the removal of plaintiff's property and the evidence of intent on her part to take up her residence at Marietta, the defendant's rely upon testimony showing her

presence at Marietta.at a time subsequent to the presentation of her exemption claim and also an admission made by her in an action which she prosecuted in a justice's court against the constable for damages for the detention of the property. This trial was had at Williamstown, directly opposite the city of Marietta, and a witness testifies that she came to Williamstown, on the morning of the trial, from Marietta. On that occasion, she testified that she had no legal residence.

If it be conceded that the evidence justified the finding by the court of a fixed intention on the part of the appellant to remove from Parkersburg to Marietta, and of preparation by her to do so, we are confronted with the question, whether there does not yet remain to be supplied one essential element of change of residence, namely, actual commencement of removal, not of the property, but of the person, personal departure from the old place of residence in the State for the new outside of it. *Burt* v. *Allen*, 48 W. Va. 154, decides that within the meaning of attachment laws a person becomes a non-resident the moment he begins the removal of his person from the place of his residence, with intent to acquire a residence in another state, even before he gets outside the State. To the same effect are *Moore* v. *Holt*, 10 Grat. 289, and *Clark* v. *Ward*, 12 Grat. 440. According to many authorities, such commencement of removal, coupled with an intent to abandon the state, falls short of the requisites of non-residence. Shinn on Attach. section 96 says, it is necessary that the defendant acquire a residence and place of abode outside of the state. Drake on Attach. section 64 says, a mere purpose to change residence, evidenced by acts of the removal of the party's property, will not make him a non-resident of the state from which he purposes to depart until he shall have begun at least the removal of his person. Wade on Attach. section 78, accords with the proposition last above stated. No case has been found which propounds a doctrine more rigid and illiberal toward the defendant. Hence, it may be safely said that by the great weight of authority nothing short of such act of removal, accompanied by intent to abandon the state, will render the party amenable to an attachment on the ground of non-residence. This proposition seems to be in accord with the general principles of the law

relating to domicile and residence, enunciated by this Court in *White* v. *Tennant*, 31 W. Va. 790, as follows: "The original domicile continues until it is fairly changed for another. It is a legal maxim that every person must have a domicile somewhere; and he can have but one at a time for the same purpose. From this it follows that one can not be lost or extinguished until another is acquired. *Baird* v. *Byrne*, 3 Wall. Jr. 1. When one domicile is definitely abandoned and a new one selected and entered upon, length of time is not important; one day will be sufficient, provided the *animus* exists. Even when the point of destination is not reached, domicile may shift *in itinere*, if the abandonment of the old domicile and the setting out for the new are plainly shown. *Munroe* v. *Douglass*, 5 Madd. 405. Thus a constructive residence seems to be sufficient to give domicile, though an actual residence may not have begun."

*Burt* v. *Allen*, cited, further declares that the elements of non-residence in the law of attachment and the elements of non-residence within the meaning of the statutes conferring a right to exempt personal property from forced sales are the same. This position seems to be supported by both principle and reason. Surely, the law is not less favorable to the claimant of a constitutional right of a character so high that the statutes, providing for its vindication, are, by the courts of almost all the states liberally construed, 12 Am. & Eng. Enc. Law, 75, than to the right of a debtor to defeat an attachment. In the former case the law impresses upon the property a status, immunity from forced sale, and withdraws it from the reach of the creditor; in the latter, the party is only given the benefit of a strict construction of remedial statutes, designed to give the creditor a means of obtaining from him what he is entitled to have, satisfaction of his debt out of the property. In both instances the law is liberal to the debtor. Hence, it would seem that in both cases the same rules for determining the question of non-residence ought to govern.

What evidence in the case supplies this element of personal removal? Nobody testifies to any departure by the appellant from Parkersburg. A witness states that she came from Marietta to Williamstown to attend the trial of an action brought by her against the constable and that, on that occa-

sion, she said she had no legal residence.   Her coming from Marietta is in no sense inconsistent with the retention of her residence in Parkersburg at the time, which she establishes by the testimony of herself and other witnesses.   The statement that she had no legal residence must be subject to the rule that she did have a legal residence somewhere; for, having had a residence in this State, it continued until she acquired one elsewhere.   The language in *Burt* v. *Allen,* importing that one need not acquire a domicile or residence in another state in order to render him a non-resident of this State, means that there need not be an actual domicile or residence in another state.   There may be a constructive residence in either state for the purpose of working out the legal rights of parties.   Appellant not having acquired either an an actual or constructive residence elsewhere, her residence in this State must be deemed to have continued.   Our conclusion is that the evidence wholly fails to establish the element of actual removal to a place out of the State and also the inception or beginning of such removal within it.

On the question of residence, the principle of *res judicata* is relied upon.   In the action by the appellant against the constable, an affidavit of her non-residence was filed and a demand made for security for costs. This motion was resisted and evidence was heard upon it and the justice, believing non-residence to have been established, required security to be given, and, in default thereof, dismissed the action.   This was not a hearing on the merits, but one upon a mere collateral motion.   "A judgment not based upon the merits is not final and conclusive in the sense that a plea of *res judicata* may be founded on it."   21 Am. & Eng. Enc. Law 266.   A nonsuit is not *res judicata.   Id.* 271.   The dismissal in equity for want of jurisdiction or any cause precluding inquiry into the merits is not *res judicata.    Id.* 271.

But one other proposition remains to be disposed of, namely, that the claim of exemption is insufficient, which contention is based upon two grounds, one of which is predicated upon the following language in the affidavit:   "That she is entitled to have and claims all the above listed property claimed by her as husband and parent exempt from execution or other process in the above cause."   The point made

is that she does not specify the character in which she claims.
To determine this question it is necessary and proper to read
the language above quoted in connection with another part
of the affidavit in which the appellant says she is a parent
and resident of the State. This language established her
character as a female parent and is wholly inconsistent with
the character of husband. Moreover the word "husband"
was used by way of recital and description of the property,
and its use appears to have been a mere inadvertence. So
read, the affidavit plainly asserts a claim as parent and
resident. In this respect, the demand is sufficiently certain
in a legal sense. The other is based upon the assertion that,
at the time the officer received the lists and claims of exemp-
tion, he held no execution or other process, authorizing a sale
of the property. The statute clearly includes an order of
attachment within the term "process." In section 25 of
chapter 41, attachment is specifically mentioned, and pro-
vision made for release by the officer of claims and demands,
garnisheed under the order of attachment. While there is
no specific direction to him as to property levied upon and
taken into his possession under an order of attachment, the
provision for the release of claims and demands suggested
and garnisheed, shows a clear legislative intent that the
officer shall not, after the delivery to him, of the lists spec-
ified in the statute, and the lapse of the time prescribed for
appraisement, withhold the possession of property taken
under process of any kind, unless it be in respect
to claims which are excepted from the operation of the
exemption law.

The conclusion resulting from this examination of the
record and authorities is that the circuit court erred in dis-
solving the injunction and dismissing the bill, and that the
decree must be reversed with costs in this Court to the appel-
lant, the bill reinstated and a decree entered perpetuating the
injunction and requiring the appellees to pay to the appellant
her costs in the circuit court.

*Reversed and Injunction Perpetuated.*