312 S.E.2d 746

**ACF INDUSTRIES, INC.**

v.

**CREDITHRIFT OF AMERICA, INC., Appellee,**

**Jackie D. Stewart, Appellant.**

**No. 15595.**

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

Dissenting Opinion Feb. 21, 1984.

---

Frankel & Kincaid, Charles M. Kincaid, Huntington, for appellant.

James St. Clair, Huntington, for appellee.

MILLER, Justice:

In this case we are asked to determine whether a debtor may claim his one thousand dollar personal exemption under W.Va.Code, 38–8–1 (1974), as against the net amount of wages that are available for suggestee execution of wages under W.Va. Code, 38–5A–3 (1979). We hold that he can.

The facts of this case are not in dispute and serve to illustrate the issue. On November 10, 1980, the appellee, Credithrift of America, Inc. (hereinafter Credithrift), was awarded a judgment against the appellant, Jackie D. Stewart, and his wife in the amount of $2,517.33 plus interest and costs. Thereafter, in accordance with W.Va.Code, 38–5A–3 (1979), Credithrift caused a suggestee execution to be issued against ACF Industries, Inc., his employer.

Mr. Stewart claimed his one thousand dollar personal exemption under W.Va. Code, 38–8–1 (1974),[1] by giving notice to ACF Industries. ACF Industries honored this claim of exemption until the total wages after deduction of all state and federal taxes paid to the appellant exceeded one thousand dollars.

Thereafter, ACF Industries began withholding a portion of Mr. Stewart's wages to the extent permitted by W.Va.Code, 38–5A–3 (1979). Mr. Stewart objected to this, contending that ACF Industries could not respond to the suggestee execution until his one thousand dollar personal exemption had been exhausted by applying it only against the net amount of wages available for suggestee execution (i.e. twenty percent or the excess over thirty times the minimum wage) under W.Va.Code, 38–5A–3 (1979).[2] ACF Industries then filed this action seeking court determination of the proper amount to withhold.

The circuit court held that the one thousand dollar personal exemption applied to the full amount of salary or wages (after the deduction of all state and federal taxes) paid to the judgment debtor and not merely to the net amount subject to the suggestee execution.

The parties agree that three statutory provisions are relevant in this case, W.Va.Code, 38–5A–3 (1979), 38–8–1 (1974), and 38–5A–9. The suggestee execution statute, W.Va.Code, 38–5A–3 (1979), allows a creditor to garnish up to twenty percent of a debtor's weekly wages or the excess of thirty times the federal minimum hourly wage, whichever is less. The personal exemption found in W.Va.Code, 38–8–1 (1974), allows a debtor to exempt one thousand dollars worth of personal property from execution or other process. Finally, W.Va.Code, 38–5A–9, links these provisions by allowing a judgment debtor to claim his personal exemption as to wages "which would otherwise be subject to suggestion." [3]

Before discussing these statutes, it is important to note that both W.Va. Code, 38–8–1 (1974), dealing with the one thousand dollar personal exemption, and W.Va.Code, 38–5A–3 (1979), relating to the amount of wages subject to suggestee execution, are species of exemption statutes. Such statutes have as their chief characteristic the extension to a debtor of the right to retain a portion of his property free from seizure or sale by his creditors under judicial process. 31 Am.Jur.2d *Exemptions* § 1 (1967); 35 C.J.S. *Exemptions* § 1 (1960). The general rule is that exemption statutes are liberally construed in favor of the debtor. *Hickman v. Hanover*, 33 F.2d 873 (4th Cir.1929); *Davidson v. Hannon*, 67 Conn. 312, 34 A. 1050 (1896); *Dowd v. Heuson*, 122 Kan. 278, 252 P. 260 (1927); *Hutchinson v. Whitmore*, 90 Mich. 255, 51 N.W. 451 (1892); 31 Am.Jur.2d *Exemptions* § 8 (1967); 35 C.J.S. *Exemptions* § 4(b) (1960).

1. W.Va.Code, 38–8–1 (1974), provides in material part:

    "Any husband, wife, parent or other head of a household residing in this State, or the infant children of deceased parents, may set apart and hold personal property not exceeding one thousand dollars in value to be exempt from execution or other process, except as hereinafter provided."

2. The applicable portion of W.Va.Code, 38–5A–3 (1979), is:

    "[T]he execution and the expenses thereof shall become a lien and continuing levy upon the salary or wages due or to become due to the judgment debtor within one year after the issuance of the same, unless sooner vacated or modified as hereinafter provided, to an amount equal to twenty per centum thereof and no more, but in no event shall the payments in satisfaction of such an execution reduce the amount payable to the judgment debtor to an amount per week that is less than thirty times the federal minimum hourly wage then in effect."

3. W.Va.Code, 38–5A–9, provides:

    "A judgment debtor to whom money is due or to become due which would otherwise be subject to suggestion under this article may have the same exempted from levy in the manner and to the extent provided for by article eight [§ 38–8–1 et seq.] of this chapter. The exemption may be claimed for sums currently accruing but must be asserted anew as to any salary or wages which shall begin to accrue after the next payment date. Such exemption shall not be binding upon a suggestee unless and until a certificate of exemption or true copy thereof shall have been delivered to him."

In *State to Use of Burt v. Allen*, 48 W.Va. 154, 162–63, 35 S.E. 990, 993 (1900), this Court in referring to the 1881 version of W.Va.Code, 38–8–1, stated that the "exemption statute must be liberally construed to accomplish its object, which is for the protection and benefit of a poor debtor and his helpless family, to give them the bread of life, and a pillow whereon to lay the head, to save them from destitution and absolute want."

■ We agree with the circuit court that the three statutory provisions must be read *in pari materia* and construed collectively to determine the rights of a debtor since W.Va.Code, 38–5A–3 & 9, relate to the same subject matter, i.e. suggestee execution of wages. Furthermore, W.Va.Code, 38–5A–9, refers to the use of the personal exemption contained in W.Va.Code, 38–8–1 (1974). Thus, they meet the test of Syllabus Point 1 of *Newton v. Dailey*, 167 W.Va. 347, 280 S.E.2d 91 (1981):

" 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Commissioner*, [159] W.Va. [108], 219 S.E.2d 361 (1975)."

■ When the three statutes are read together, it is apparent that the one thousand dollar exemption under W.Va.Code, 38–8–1 (1974), only applies to the net amount of wages subject to suggestee execution since this is the amount that "would otherwise be subject to suggestion" by virtue of W.Va.Code, 38–5A–9. This latter statute permits a judgment debtor to utilize his personal exemption by referring to W.Va.Code, 38–8–1 (1974). Of greater significance is that this statute ties the personal exemption to "money [which] is due or to become due *which would otherwise be subject to suggestion under this article.*" (Emphasis added) It is clear that under W.Va.Code, 38–5A–3 (1979), the only amount of wages subject to suggestion is twenty percent or the excess over thirty times the minimum wage, whichever is less. Thus, this is the amount that is "oth-

erwise subject to suggestion" under W.Va. Code, 38–5A–9 (1979), and is the amount to which the one thousand dollar exemption under W.Va.Code, 38–8–1 (1974), applies.

To read these provisions otherwise would result in the absurd conclusion that the legislature intended to have both exemptions apply to the same fund of money. The suggestee execution statute, W.Va. Code, 38–5A–3 (1979), exempts roughly eighty percent of the debtor's wages from execution. The debtor, therefore, has no need to use his one thousand dollar personal exemption to protect this portion of his wages. It is only the twenty percent which is subject to suggestee execution that calls into play the personal exemption under W.Va.Code, 38–8–1 (1974). We think it is clear that the legislature intended this result by giving the separate personal exemption right in the suggestee execution statute, W.Va.Code, 38–5A–9, and by making the personal exemption applicable only to the amount "which would otherwise be subject to suggestion under this article." W.Va.Code, 38–5A–9.

There appears to be little direct authority in this area. A similar result was reached in *Walker v. Williams & Bouler Constr. Co.*, 46 Ala.App. 337, 340, 241 So.2d 896, 899 (1970), where the court answered the following question in the affirmative: Could the appellant "after getting the benefit of the 75 percent exemption of wages ... also claim the remaining 25 percent under the one thousand dollar personal property exemption." *Cf. Holley v. Crow*, 355 So.2d 1123 (Ala.Civ.App.1978).

For the foregoing reasons, we conclude that W.Va.Code, 38–5A–9, permits a debtor to apply his one thousand dollar personal exemption under W.Va.Code, 38–8–1 (1974), to the net amount subject to suggestee execution under W.Va.Code, 38–5A–3 (1979). Consequently, we reverse the decision of the circuit court and remand the case for further proceedings consistent with this opinion.

Reversed and Remanded.

NEELY, Justice, dissenting:

The prospect of requiring impecunious debtors to satisfy their obligations from their wages is not a pleasant one. Individuals who are unable to pay debts are probably not making large salaries, and garnishing a portion of their pay may make their economic situation still more bleak. Courts cannot be insensitive to such human considerations, but courts must recognize that their primary responsibility is to enforce the law. Because I believe today's decision is not in accord with the law laid down by the legislature of this state, I must dissent.

*W. Va. Code* 38–8–1 [1974] allows a debtor to exempt one thousand dollars of personal property from any form of levy by a creditor. *W. Va. Code* 38–5A–3 [1979] limits the right of creditors to satisfy a debtor's obligation to them through suggestee execution. It states that a creditor cannot use suggestee execution against more than twenty percent of the net paycheck or the excess of thirty times the federal minimum hourly wage of a debtor, whichever is less. Finally, *W. Va. Code* 38–5A–9 [1939] allows a debtor to treat money due to him as personal property for the purposes of taking personal exemptions under *W. Va. Code* 38–8–1 [1974].

The majority claims that these three statutory provisions taken together mean that a debtor may multiply his one thousand dollar exemption into a five thousand dollar exemption by applying it to wages. A close examination of the statutory language indicates that this strange result is not compelled by the legislature's scheme. In fact, that result would frustrate the statutory goal of treating all of a debtor's assets equally.

It is true that both *W. Va. Code* 38–8–1 [1974] and *W. Va. Code* 38–5A–3 [1979] create exemptions. However, they create two very different sorts of exemptions. *W. Va. Code* 38–8–1 [1974] gives a debtor discretion to provide absolute protection for some particularly valuable piece of personal property—perhaps a car which is necessary to get to work. *W. Va. Code* 38–5A–3 [1979], on the other hand, is aimed at an entirely different concern. It does not seek to protect any particular property, but instead is aimed at protecting the debtor from a particularly efficient form of debt collection—namely suggestee execution against wages.

From the standpoint of a creditor, suggestee execution is the safest and simplest way of obtaining payment on a bad debt. By moving directly against wages, the creditor can be sure that the money will not be spent before he receives it. From the point of view of the debtor, however, a rule that allows a creditor to garnish all wages could make survival impossible. As this court has noted, "Wages have traditionally been afforded special protection under the law, in recognition of the fact that working people depend on wages to furnish the basic necessities of life to themselves and their families." *Mullins v. Venable,* 171 W.Va. 92, 297 S.E.2d 866, 871 (1982). In recognition of this fact, the legislature has struck a balance between the creditor's right to receive payment on a bad debt and the debtor's need to rely on a portion of wages for survival. The terms of that reconciliation of competing interests are set out in *W. Va. Code* 38–5A–3 [1979]. The legislature has determined that allowing a creditor to take the lesser of twenty percent of an employee's wages or the excess above thirty times the federal hourly minimum wage adequately protects the debtor's interest in having sufficient money to survive. It is the province of the legislature to make such political accommodations between the interests of competing groups, and it is not the function of this court to second-guess the judgments made by other actors in the political process.

Once the debtor has received his paycheck, that money is no longer subject to suggestee execution and it is no longer wages entitled to special protection. The concern that the debtor will be deprived of the necessities of life because he has never seen any portion of his paycheck is no longer operative. If the debtor does not, in fact, need all of the wages protected from suggestion to purchase food and shelter for himself and for his family, he may choose

to place some of the surplus in a savings account, an Individual Retirement Account or even in a mattress. Because that money is no longer a wage subject to suggestee execution, a creditor would be entitled to levy against that cash. However, if the debtor chooses to include that cash in his one thousand dollar exemption, the creditor cannot get at that money through any form of levy.

It is in this context that we can understand the goal of the statutory scheme. Some debtors may not have any significant items of personal property that they wish to exempt. Similarly, they may not have one thousand dollars of cash on hand. Their most valued asset may be the wages they anticipate receiving in the future. Although *W. Va. Code* 38–5A–3 [1979] protects that money before it reaches their hands, it is silent about the money once the debtor comes to possess it. Because such anticipated earnings are not personal property in the traditional, technical sense of the legal term, it was necessary for the legislature to enact *W. Va. Code* 38–5A–9 [1939] to indicate that debtors who wish to protect that asset could do so up to the one thousand dollar limit on personal exemptions.

The legislature's intent is manifest from the plain language of that statute. *W. Va. Code* 38–5A–9 [1939] reads in pertinent part: "A judgment debtor to whom money is due or to become due which would otherwise be subject to *suggestion* under this article may have the same exempted from *levy* in the manner and to the extent provided for by Article 8 [§ 38–8–1 et seq.] of this chapter." [emphasis added]. The statute speaks of exempting money which would otherwise be subject to suggestion from all forms of levy. It is clear that the legislature understood the difference between those two terms, and wished to give debtors the broader protection from all forms of levy for money which would otherwise be subject to the more narrow but particularly effective creditor remedy of suggestion.

Furthermore, the legislature explicitly limited this debtor option to the extent provided in *W. Va. Code* 38–8–1 [1974]. In other words, up to $1,000 can be exempted. The statute makes no reference to allowing this option to be used in conjunction with *W. Va. Code* 38–5A–3 [1979] despite the fact that the precursor to that provision was drafted at the same time or *W. Va. Code* 38–5A–9 [1939]. Thus, the statute allows a debtor to protect $1,000 (the extent provided in *W. Va. Code* 38–8–1 [1974]) of cash not yet in hand from all forms of levy. This is in addition to the protection from suggestion provided in 38–5A–3 [1979] and is in no way related to it. To allow a debtor to get a $5,000 protection from *levy* because he chooses to protect an asset that had an additional, yet unrelated, protection against suggestion is unreasonable and not in accord with the statute.

The whole idea of the legislative plan is to assure some equality among debtors. Under old exemption statutes, it was common for certain items such as a horse or plow to be exempted while other items were subject to levy. The inequity of such a scheme is obvious in that it places parties who happen to have certain favored possessions in a better position than individuals who own other, less well thought of possessions. Our statute allows each debtor to decide what is valuable to him or her, whether it is a car, a piece of jewelry or cash—either cash in hand or anticipated earnings. If we allow individuals who choose to exempt anticipated earnings to have an advantage over individuals who exempt other personal possessions, we are taking a step backward. A large class of debtors do not have a steady income stream. It is wholly alien to the principle of horizontal equity to tell those who are so unfortunate as to be unemployed that they cannot exempt as much personal property from levy as those who, while poor, at least have a steady flow of cash.

Finally, although I noted at the outset that the prospect of having creditors levy against the wages of debtors is not a pleasant one, it should be remembered that we are not dealing with a case of Good against Evil here. Companies that sell relatively inexpensive consumer goods to the poor frequently find themselves in the position of being unsecured creditors. If we do not

allow them some reasonable means of achieving satisfaction of those debts, we run the risk of making the procurement of necessary commodities even more difficult for the poor of our state. We do not help the class of consumer debtors by making it impossible for creditors to collect from them. The only effect that will have is to stop commercial parties from dealing with the poor. Because I do not believe such a course is wise, and because I do not believe that such a course is in keeping with our legislature's mandate in this quintessentially political realm where the countervailing interests of debtors and creditors must be balanced, I dissent.