460 S.E.2d 507

**James W. BENNETT and Alicia Bennett, Plaintiff Below, Appellants,**

v.

**Ottie ADKINS, Sheriff of Cabell County, Defendant Below, Appellee.**

No. 22360.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided July 17, 1995.

---

375

Norman Googel, Heather R. Hussell, W.Va. Legal Services Plan, Inc.; Huntington, for appellants.

R. Carter Elkins, W. Joseph Bronosky, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for appellee.

FOX, Judge:[1]

This case from the Circuit Court of Cabell County, West Virginia, brings to this Court a controversy which began when the appellee, the Sheriff of Cabell County, seized a 1980

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order extended this assignment until further order of said Court.

Dodge Aspen automobile belonging to the appellants, James and Alicia Bennett.

On 7 January 1994, the Sheriff seized the car under writ of execution issued on a default judgment entered against the Bennetts in favor of D.S. and A.V. Tomkies. On 7 January 1994, according to Mrs. Bennett, or on 10 January 1994, according to a deputy sheriff, the Bennetts exempted the car from the execution by filing an affidavit of exemption as permitted by West Virginia Code § 38–8–3 (1985). Five days passed, and the judgment creditors, the Tomkies, did not demand an appraisement as provided in W.Va. Code § 38–8–4 (1985). Thus, as the circuit court later held, the Bennetts had properly exempted their car from the execution of the judgment and "the officer . . . in possession had a mandatory duty to release the seized property and return the same to the judgment debtor."

Unfortunately, "the officer," the Sheriff, did not release and return the car. Instead, a deputy sheriff and an assistant prosecuting attorney apparently offered the Bennetts some highly questionable legal advice. The Bennetts were advised the affidavit of exemption was filed "too late," and the car would be sold on 14 January 1994 unless they went to magistrate court and obtained a stay of execution. The Bennetts went to magistrate court, and, on 11 January 1994, the magistrate issued a stay of execution which halted plans for the Sheriff's sale of the Bennetts' car. The car was exempted from the execution, and the sale was enjoined. However, the Sheriff did not release the car.

The Bennetts went back to court. Now assisted by counsel, the Bennetts filed in the circuit court a petition for a writ of mandamus requiring the Sheriff to release the car. The Bennetts sought a declaration of the validity of their affidavit exempting the car from the execution. Pursuant to W.Va.Code § 38–8–8 (1985), they asked the court to impose on the Sheriff a penalty of $5.00 a day for wrongfully refusing to release the automobile, and they asked for attorney's fees.

The circuit court held four hearings on the matter, on 1, 9, 14, and 25 March 1994. Following an evidentiary hearing on 9 March 1994, the judge held that under W.Va.Code § 38–8–3 (1985),[2] at any time prior to the sale of seized property a debtor can file an affidavit claiming personal property exempt from execution. And, the court held, "as a matter of law," that in the absence of the judgment creditor's demand for an appraisement within five days, "the officer . . . in possession of the seized property has a mandatory duty to release the seized property and return the same to the judgment creditor."

Having correctly stated the law of the case, the court balked and, without explana-

2. West Virginia Code § 38–8–3 states:

When a debtor claims personal property as exempt under the provisions of this article, he shall deliver to the officer holding the execution or other process, a list by separate items with the fair market value of each item, according to the belief of the debtor, of all personal property and estate owned or claimed by him, including money, bonds, bills, notes, claims and demands, with the residence of the person against whom such bonds, bills, notes, claims and demands are. Such list shall also set forth with respect to each such item of personal property and estate the name and address of the holder of and the current amount owing on each lien thereon other than judicial liens obtained by legal or equitable proceedings. The debtor shall verify such list, valuation and lien indebtedness by affidavit, which affidavit shall also show that the debtor is entitled to such exemption, and shall specify the character in which he claims to be so entitled, as for example, that he is a husband.

If the value of the property named in such list exceeds, as stated therein, one thousand dollars, the debtor shall state at the foot thereof what part of such property he claims as exempt, as aforesaid; but if such value does not exceed one thousand dollars, as so stated, the claim of exemption shall be held to extend to the whole thereof without stating more; and if no appraisement thereof be demanded, as hereinafter provided, the property so claimed shall be set apart to the debtor as exempt as aforesaid. If the husband, wife, parent or other head of a household owning such property be absent, or incapable of acting, or neglect or decline to act, the claim may be made, the list delivered, and the affidavit made by another member of the family, with the same effect as if made by the owner, and the claim may be made, the list delivered, and the affidavit made on behalf of infant children by the guardian thereof or someone standing in loco parentis thereto. The officer shall immediately, upon receipt of the list, exhibit the same to the creditor, his agent or attorney.

tion, refused the Bennetts' counsel's request for an order directing the Sheriff to return the car to the Bennetts. Instead of ordering the Sheriff to return the car, the court ordered "that Thompson's Auto Service release the 1980 Dodge Aspen motor vehicle unto the possession of James W. Bennett and Alicia Bennett." Thompsons's Auto Service had towed and stored the car. But, Thompson's, a non-party in the proceedings, refused to release it without the Sheriff's assurance that he would take responsibility for the towing and storage fees. The Sheriff refused to give any such assurance.

Involuntary pedestrians still, the Bennetts returned to court on 14 March 1994 and asked the judge to order the Sheriff to assure payment of the towing and storage fees. After due deliberation, the court declared, "Well, okay, I am going to leave the car as is, but if I was going to rule right now, I would rule against the Sheriff's Department in this case." Unfortunately for the Bennetts, the court did not rule at that point, but instead gave the Sheriff ten days to file a brief supporting his contention that the Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–5 (1992),[3] shielded him from statutory damages for wrongfully withholding the car. The Sheriff filed no brief. The Bennetts remained afoot.

The court held a final hearing on 25 March 1994. The court held the Bennetts were responsible for $58.30, an amount which represented the towing costs and nine days of storage fees.[4] The court ordered the remaining $255.30 of storage fees be paid from the indemnifying judgment bond purchased by the Tomkies. The court restated its earlier holdings confirming the validity of the

Bennetts' affidavit of exemption and recognizing the Sheriff's mandatory duty to return the motor vehicle. But, having ruled in the Bennetts' favor on these legal issues, the court once again refused them a writ of mandamus ordering the Sheriff to return the motor vehicle. The court cited the Sheriff's "good faith" as the reason for denying the Bennetts' request for an order directing the Sheriff to return the car. The court also refused to impose on the Sheriff the statutory penalty for wrongfully withholding seized property, once again citing the Sheriff's "good faith." And, the court refused the Bennetts' request for attorney's fees. The Bennetts' car remained impounded.

On 29 April 1994, the Bennetts went back to court. They filed in this Court a motion for an injunction ordering the return of their car. This Court set the matter for hearing on 7 June 1994. On 5 May 1994, the Sheriff arranged the release of the Bennetts' car. After 118 days of impoundment, the 1980 Dodge Aspen motor vehicle was freed at last.

In our opinion, the Sheriff wrongfully withheld the Bennetts' car from 16 January until 5 May 1994. Further, the circuit court erred by not granting the Bennetts' request for an order requiring the Sheriff to return the car and by failing to impose upon the Sheriff the statutory penalty for wrongfully withholding seized property.

■■■ A judgment debtor may claim an exemption at any time before the sale of property seized under a writ of execution. *State to Use of Burt v. Allen*, 48 W.Va. 154, 35 S.E. 990 (1900). Following the filing of a judgment debtor's affidavit of exemption, W.Va.Code § 38–8–4 (1985)[5] allows the judg-

---

**3.** West Virginia Code § 29–12A–5(b)(3) (1992) states:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> \*  \*  \*  \*  \*  \*
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

**4.** The nine days for which the Bennetts were to be responsible for storage fees represented the period of time from seizure to when the judgment creditors could have demanded an appraisement.

**5.** West Virginia Code § 38–8–4 (1985) states:

> If, within five days after the delivery of the list to the officer, the creditor, his agent or attorney, demand an appraisement of the property listed under the preceding section [§ 38–8–3], two disinterested householders of the neighborhood shall be chosen, within twenty-four hours of such demand, one by the debtor, his agent or attorney, or, in their absence or failure to act, by his spouse, and the other by the creditor, his agent or attorney and these two, if they cannot agree, shall select a third; but if either party fail to choose an appraiser, or the two fail to select a third, or if one or

ment creditor five days to file a demand for an appraisement of the property claimed exempt. If the judgment creditor does not file the appraisement demand within the five-day period, the Sheriff or other officer in control of the exempted property has a mandatory duty to release the property and return it to the judgment debtor forthwith.

In this case, the Bennetts filed an affidavit of exemption prior to the sale of the seized property. Five days passed, and the Tomkies did not file a demand for appraisement. Thus, beginning 16 January 1994, the Sheriff had a mandatory statutory duty to release the Bennetts' car. When the Sheriff did not do so, the Bennetts went to circuit court and sought a writ of mandamus ordering the Sheriff to comply with the law and release the car.

■ "To invoke mandamus the relator must show (1) a clear right to the relief sought; (2) a legal duty on the part of the respondent to do the thing relator seeks; and (3) the absence of another adequate remedy." *Myers v. Barte*, 167 W.Va. 194, 279 S.E.2d 406 (1981). The Bennetts had a clear right to have their car returned. The Sheriff had a mandatory legal duty to return the car. The Bennetts had no other adequate remedy to require the Sheriff to perform his duty. Thus, the circuit court erred when it refused mandamus.

■ As justification for denying the Bennetts' request for an order directing the Sheriff to release the car, the circuit court cited the Sheriff's "good faith." We believe this ruling to be erroneous. A court may not deny an otherwise meritorious mandamus remedy on the ground the respondent acted in good faith. The respondent's intentions and state of mind are largely immaterial to the mandamus proceeding.

■ In his brief to this Court, the Sheriff argues the circuit court properly denied the writ because the Bennetts had another adequate remedy. They could return to court and ask that the towing and storage company, Thompson's Auto Service, be held in contempt for not releasing the car as ordered by the court. In fact, says the Sheriff, the court

more of the appraisers fails to act, the officer

twice invited the Bennetts to bring Thompson's into court. But Thompson's was a mere bailee in physical possession of the car. From a legal and a practical standpoint, the Sheriff held the keys to the car. A contempt action against Thompson's was not an adequate remedy for the Bennetts.

The Bennetts had twice gone to court and still had no car. The court had before it the Sheriff, the only party necessary to provide the Bennetts with a full and adequate remedy. The court had a duty to directly order the Sheriff to release and return the Bennetts' car forthwith. Instead, the court ordered Thompson's to release the car and then invited the Bennetts to bring Thompson's into court for another round of unnecessary litigation.

The circuit court also refused to impose on the Sheriff the statutory penalty provided when an officer fails to release exempted property seized under a writ of execution, again citing as grounds the Sheriff's "good faith."

■ West Virginia Code § 38–8–8 (1985) provides:

... [A]ny officer failing to release any money or property in his control which shall have been exempted, or failing to deliver the same if in his possession, to the debtor, his agent, attorney or spouse, upon request, shall forfeit to the debtor five dollars for each day such failure may continue, which forfeiture may be recovered from the officer and his sureties in an action upon his official bond in any court having jurisdiction.

The intent, meaning, and requirement of this statute are plain on its face and not open to dispute, discussion, or analysis. The statute makes no provision for the officer's good faith or lack thereof. Under the statute, the Sheriff must forfeit to the Bennetts $5.00 a day for each day he failed to release the car, and his failure to do so in this case was error. The judgment creditors' five-day appraisement demand period expired 16 January 1994. On that day the Sheriff had a mandatory duty to release and return the car. He

shall fill the vacancy.

wrongfully withheld the car until 5 May, a period of 109 days. At $5.00 per day, the Sheriff must forfeit to the Bennetts a total of $545.00. We order payment to the Bennetts of $545.00 as the statutory penalty for the Sheriff's wrongful withholding of their car.

The circuit court further erred when it required the Bennetts to pay $58.30 in towing and storage fees. If a judgment debtor properly exempts property from execution, all costs incident to the execution should be paid from the judgment creditors' indemnifying bond required by W.Va.Code § 38-6-1 (1985). The return of exempted property cannot be conditioned on requiring the judgment debtor's payment of fees attendant to the execution. Within the constitutional monetary limits, and under the statutory regulations, the right of exemption is absolute. *Hibner v. Belcher,* 115 W.Va. 387, 176 S.E. 422 (1934). This rule assumes particular importance when the judgment debtors possess limited financial means. In this case, the $58.30 paid by the Bennetts represented almost one-fifth of the family's monthly income and over one-half the value of their car. Requiring the Bennetts to pay the $58.30 in fees and costs contradicts the basic intent of the exemption statute. *State to Use of Burt v. Allen,* 48 W.Va. 154, 35 S.E. 990 (1900),[6] cited with approval in *ACF Industries v. Credithrift,* 173 W.Va. 83, 86, 312 S.E.2d 746, 749 (1983). We order reimbursement of the Bennetts for their payment of $58.30 in towing and storage fees, said amount to be paid from the indemnifying bond of the judgment creditors.

In their circuit court petition for the writ of mandamus, the Bennetts requested an award of attorney's fees. The circuit court cited two reasons for denying the request: (1) the Sheriff "acted in good faith," and (2) the Bennetts were "not entitled to their requested relief in regard to a Writ of Mandamus." We find neither reason justifies the denial of attorney's fees in this case.

"Costs and attorney's fees may be awarded in mandamus proceedings involving

public officials because citizens should not have to resort to lawsuits to force government officials to perform their legally prescribed nondiscretionary duties." Syl. pt. 1, *State ex rel. West Virginia Highlands Conservancy, Inc., et al. v. West Virginia Division of Environmental Protection and Callaghan, et al.,* 193 W.Va. 650, 458 S.E.2d 88 (1995) (hereafter *Highlands II* ).

"Where a public official has deliberately and knowingly refused to exercise a clear legal duty, a presumption exists in favor of an award of attorney's fees; unless extraordinary circumstances indicate an award would be inappropriate, attorney's fees will be awarded." *Id.* at syl. pt. 3. But, "[w]here a public official has failed to exercise a clear legal duty, although the failure was not the result of a decision to knowingly disregard a legal command, there is no presumption in favor of an award of attorney's fees. Rather, the Court will weigh the following factors to determine whether it would be fairer to leave the costs of litigation with the private litigant or impose them on the taxpayers: (a) the relative clarity by which the legal duty was established; (b) whether the ruling promoted the general public interest or merely protected the private interest of the petitioner or a small group of individuals; and (c) whether the petitioner has adequate financial resources such that petitioner can afford to protect his or her own interests in court and as between the government and petitioner." *Id.* at syl. pt. 4.

We begin with the threshold question posed by *Highlands II.* Did the Sheriff have a clear legal duty to return the Bennetts' car? The answer is yes. As previously noted, the circuit court concluded, "the officer ... in possession of the seized property ha[d] *a mandatory duty* to release the seized property and return the same to the judgment debtor." (Emphasis added). The meaning of the court's holding is plain and requires no interpretation. The Sheriff required no further instruction regarding his legal duty. The Sheriff had a clear legal

---

**6.** "Th[e] exemption statute must be liberally construed to accomplish its object, which is for the protection and benefit of a poor debtor and his helpless family, to give them the bread of life and

a pillow whereon to lay the head, to save them from destruction and absolute want." *State to Use Burt v. Allen,* 48 W.Va. 154, 162–63, 35 S.E. 990, 993 (1900).

duty to release and return the Bennetts' car, and he did not do so.

■ Accordingly, we next determine the answers to the additional questions posed by syllabus points 3 and 4 of *Highlands II*. Did the Sheriff deliberately and knowingly refuse to perform his clear legal duty, or did he simply fail to perform his duty?

First, did the Sheriff deliberately and knowingly refuse to perform his clear legal duty? Despite two court actions and several flurries of lawyering, the Sheriff's legal position remained blurred. The Sheriff claims he feared his release of the car would violate the magistrate court stay and subject him to a contempt citation. We do not agree, but we cannot dismiss the possibility the Sheriff reasonably held such a belief. Further, the Sheriff presumably looked to his counsel, the prosecuting attorney's office, for clarifying advice on the stay's implication, and there is every possibility that the advice he received was not entirely adequate. Finally, although the circuit court advised him of his legal duty, the court never specifically ordered him to release the car.

For these reasons, we find the record in this case presents insufficient evidence supporting a conclusion the Sheriff deliberately and knowingly refused to perform his clear legal duty. Rather, we conclude the Sheriff simply failed to perform his duty. Accordingly, we find no presumption in favor of an award of attorney's fees.

Therefore, we now weigh the three factors set forth in syllabus point 4 of *Highlands II* to determine whether it would be fairer to leave the costs of this litigation with the Bennetts or impose these litigation costs on the taxpayers.

First, as discussed above, we believe the Sheriff's legal duty was clearly established by the circuit court's holding that "the officer ... in possession of the seized property ha[d] a mandatory duty to release the seized prop-

erty and return the same to the judgment debtor." Second, although this case involves a primarily private dispute, we cannot disregard the broader implications of the case as it relates to the clarification of the proper methods for exempting property from execution and securing the timely release of such exempted property. Finally, it is clear from the record of this case that the Bennetts do not possess financial resources adequate to protect their interests against incorrect actions by governmental officials.

■ For these reasons, under the standard set forth in syllabus point 4 of *Highlands II*, we conclude the Bennetts are entitled to an award of attorney's fees and costs. Accordingly, we order payment by the Cabell County Sheriff's Department to the Bennetts of reasonable attorney's fees and costs for the litigation in the circuit court and in this Court, and we remand this case to the circuit court for the sole purpose of determining the proper amount of those fees and costs.[7]

We reverse the judgment of the Circuit Court of Cabell County, order the relief specified above, and remand the case to the circuit court for a determination of the amount of attorney's fees and costs to which the appellants are entitled.

Thus endeth the saga of the 1980 Dodge Aspen. Perhaps this case serves as a testimony to one of the true strengths of our system of jurisprudence. It accepts and ultimately resolves all legal entanglements, no matter how great or small—even entanglements involving a single, solitary 1980 Dodge Aspen automobile.

Reversed and remanded with directions.

BROTHERTON, J., did not participate.

MILLER, Retired J., and FOX, Judge, sitting by temporary assignment.

---

7. Following our decision in *Highlands II*, we typically would remand this case to the circuit court for further development upon the issues of whether attorney's fees and costs should be awarded and, if so, in what amount. *Cf. West Virginia Education Association, et al. v. The Con-* *solidated Public Retirement Board, et al.* 194 W.Va. 501, 460 S.E.2d 747 (1995). However, we find the record sufficient in this case to determine that attorney's fees and costs should be awarded, so the only issue to be decided upon remand is the amount of those fees and costs.