STATE *ex rel.* C. R. BAKER, *etc.*

***v.***

ROBERT D. BAILEY, SECRETARY OF STATE, *et al., etc.*
AND ROBERT G. PHILLIPS

(No. 12765)

*and*

STATE *ex rel.* ERNEST L. HAGER, *etc.*

***v.***

ROBERT D. BAILEY, SECRETARY OF STATE, *et al., etc.*
AND DON C. ELKINS

(No. 12766)

*and*

STATE *ex rel.* REX W. SMITH, *etc.*

***v.***

ROBERT D. BAILEY, SECRETARY OF STATE, *et al., etc.*
AND JOSEPH B. LIGHTBURN

(No. 12767)

Submitted October 4, 1968.     Decided October 16, 1968.

Written opinion filed October 29, 1968.

*Beckett & Burford, Robert H. Burford,* for relators.

*C. Donald Robertson,* Attorney General, *Thomas B. Yost,* Assistant Attorney General, *A. E. Fiorentino, Daniel D. Dahill,* for respondents.

BERRY, PRESIDENT:

These consolidated cases involve proceedings in mandamus filed under the original jurisdiction of this Court by the petitioners C. R. Baker, Ernest L. Hager and Rex W. Smith, as citizens and taxpayers of the Twelfth, Seventh and Thirteenth Senatorial Districts of West Virginia respectively, against Robert D. Bailey, Secretary of State of West Virginia, against the ballot commissioners from each county comprising the particular Senatorial Districts involved in each proceeding and against Robert G. Phillips, Don C. Elkins, and Joseph B. Lightburn, the Republican nominees in the various certificates of nomination filed in the office of the Secretary of State for the Twelfth Senatorial District, the Seventh Senatorial District and the Thirteenth Sena-

torial District respectively. The purpose of the three original proceedings was to compel the respondent Robert D. Bailey, Secretary of State, to withdraw the certificates of candidacy of Phillips, Elkins and Lightburn and to notify the respondent ballot commissioners of each of the counties composing the Twelfth, Seventh and Thirteenth Senatorial Districts of West Virginia of the withdrawal of said certificates and to further require the respondent ballot commissioners of said Senatorial Districts to omit the names of Robert G. Phillips, Don C. Elkins and Joseph B. Lightburn from the ballot to be used in the several Senatorial Districts in the general election to be held on November 5, 1968. The issues involved in all three cases are identical and the cases were consolidated for argument together by counsel for the respective parties and were submitted for decision of this Court upon arguments and briefs October 15, 1968.

On October 16, 1968, this Court by order granted the writs prayed for in the petitions and directed the respondents to omit the names of Phillips, Elkins and Lightburn from the official ballots to be used in the general election on November 5, 1968, as the Republican candidates for offices of State Senator in their various Senatorial Districts. This opinion, which is now deemed necessary to be filed, is written for the purpose of stating the reasons for the Court's action in awarding the writ.

In the May, 1968 Primary Election held in this State no person filed for the Republican nomination for the offices of State Senator from the Twelfth and Thirteenth Senatorial Districts, and soon after the primary election the Republican nominee for the Seventh Senatorial District withdrew as a candidate, resulting in vacancies in the nomination for State Senators on the Republican ticket in each of the three Senatorial Districts involved in this case. On July 10, 1968, August 28, 1968, and August 30, 1968, certificates of nomination were filed with the respondent Robert D. Bailey, Secretary of State, by certain members of the State Executive Committee and in some cases of the County Executive Committee purporting to nominate Robert G.

Phillips, Joseph B. Lightburn and Don C. Elkins respectively as Republican candidates for the office of State Senator for their respective Districts.

On September 13, 1968, the Secretary of State refused to certify all three proposed nominees for the reason that the persons who had signed the purported certificates of nomination were not members of the Senatorial District Executive Committee for the Republican Party in the respective Senatorial Districts as required by law, and as a result thereof the names of Robert G. Phillips, Joseph B. Lightburn and Don C. Elkins were omitted from the ballots by the ballot commissioners serving in the counties of their respective Senatorial Districts.

On or about September 16, 1968, September 17, 1968, and September 18, 1968, three certificates of nomination, the one for Lightburn being designated as an "amended certificate" and the one for Phillips "re-affirming" his previous selection, were filed with the Secretary of State purporting to nominate Elkins, Phillips and Lightburn as Republican candidates for State Senate from the Seventh, Twelfth and Thirteenth Senatorial Districts respectively. These certificates were purportedly made by the Senatorial Executive Committee Members of the respective Senatorial Districts, and it is now contended by counsel for the respective respondents that these certificates amend, ratify or re-affirm the previous certificates.

On September 20, 1968, the Secretary of State considered the second group of certificates and certified the names of Robert G. Phillips, Joseph B. Lightburn and Don C. Elkins as nominees from their respective Senatorial Districts with direction that the ballot commissioners in the counties of the respective Senatorial Districts place their names on the official ballot to be used in the general election to be held on November 5, 1968.

It is clear under the law pertaining thereto and is apparently conceded by the respondents that the first certificates purporting to nominate Robert G. Phillips, Joseph B. Lightburn and Don C. Elkins by certain members of the

State Executive Committee of July 10, August 28 and August 30, 1968, did not in any respect comply with such law because such vacancy can only be filled by the committee of the political party of the political subdivision in which the vacancy occurs, which, in this case, is the senatorial district committee. The provisions governing this matter are contained in Code 3-5-19, as amended, which reads as follows:

> "If any vacancy shall occur in the party nomination of candidates for office, caused by the death, withdrawal, failure to make a nomination for the office at the primary election, or otherwise, *it may be filled and the name of the candidate certified by the executive committee of the political party for the political division in which the vacancy occurs.* If such vacancy be not filled by the executive committee by the *sixty-fifth* day next preceding the date of the election, it shall be lawful for the chairman of the political party executive committee for the political division to *fill such vacancy,* make a certificate thereof, and file the same with the officer with whom the original certificate of nomination was or might have been regularly filed. Such certificate shall be filed not later than the *sixtieth* day next preceding the date of the election and, when filed, such officer shall proceed therewith in the same manner in all respects as in cases of original nominations. When any such vacancy exists because of failure to make a nomination for the office at the primary election, no nomination for such office shall be deemed filed under the provisions of this section until the required filing fee for such office candidacy shall have been paid as provided in section eight [3-5-8] of this article." [Emphasis supplied.]

It will be noted that the appropriate committee, that is, in this instance, the senatorial district executive committee, could fill the vacancy up until the sixty-fifth day next preceding the election on November 5, 1968, which would have been September 1, 1968, and that the chairman of such committee, if not filled by the committee, could fill the vacancy no later than the sixtieth day next preceding the day of the election, which would have been September 6, 1968.

It is not contended that the second group of purported certificates of nomination were timely filed, because they were submitted after the time limitation contained in the statute for filing such certificates but it appears that the contention of the respondents is that the certificates of the Senatorial District Executive Committees amended or re-affirmed the certificates filed by certain members of the State Executive Committee or County Committee which were timely filed, so as to relate the time of filing back before the statutory deadline.

The applicable law pertaining to the senatorial district committees is found in Code 3-1-9, as amended, in the following language:

"At the May primary election in the year one thousand nine hundred sixty-four and in every fourth year thereafter, the voters of each political party in each senatorial district shall elect two male and two female members of the State executive committee of the party. In senatorial districts containing two or more counties, not more than two such elected committee members shall be residents of the same county. The committee, when convened and organized as herein provided, shall appoint three additional members of the committee from the State at large.

"At such primary election, the voters of each political party in each county shall elect one male and one female member of the party's executive committee * * * of the senatorial district in which such county is situated and of the delegate district in which such county is situated if such county be situated in a delegate district. At the same time such voters in each magisterial district of the county shall elect one male and one female member of the party's county executive committee and, in any county containing a city of ten thousand or more in population, such voters of each ward of such city within the county shall elect one male and one female member of such county party executive committee in addition to the members thereof chosen from the magisterial district or districts in which such city is situated.

"All members of executive committees, selected for each political division as herein provided, shall

reside within the county, district, or ward from which chosen.

*"The term of office of all members of executive committees so elected shall begin on the first day of June, following said May primary, and shall continue for four years thereafter and until their successors are elected and qualified. Vacancies in the State executive committee shall be filled by the members of the committee for the unexpired term. Vacancies in the party's executive committee of a congressional district, senatorial district, delegate district or county shall be filled by the party's executive committee of the county in which such vacancy exists, and shall be for the unexpired term.*

*"As soon as possible after the first day of June, following the election of the new executive committees, as herein provided, they shall convene within their respective political divisions, on the call of the chairman of corresponding outgoing executive committees, or by any member of the new executive committee in the event there is no corresponding outgoing executive committee, and pro-ceed to select a chairman, a treasurer, and a secretary, and such other officers as they may desire, each of which officers shall for their respective com-mittees perform the duties that usually appertain to such offices."* [Emphasis supplied.]

Code 3-1-10, as amended, provides that the members of the senatorial district executive committees shall hold their office and discharge the duties thereof until their successors are installed in accordance with the provisions of this Article One. It appears that there were no members of the senatorial district executive committees involved in these proceedings elected at the May primary and it is not clear if and when any such committee members were elected, but if any were elected at any time they would hold over until their successors were elected and qualified and if the county executive committee in the various senatorial districts attempted to fill vacancies on the committee where there were no vacancies the committee set up in such manner would not be a proper committee.

It has been held that mandamus is the proper remedy in matters such as is involved in the instant case and that citizens and taxpayers are proper petitioners in such proceedings. This was clearly stated in the first syllabus point of the case of *Pack* v. *Karnes,* 83 W. Va. 14, 97 S. E. 302, which reads as follows: "A citizen, tax payer and voter has such interest as entitles him to maintain mandamus to compel a board of ballot commissioners to discharge their duties lawfully in respect to the preparation of ballots for a general election."

The legislature has fixed the time in which the proper committees can fill vacancies which may occur in party nominations of candidates for offices caused by death, withdrawal or failure to make a nomination and this Court can not change the provisions of the statute because as stated in the case of *State ex rel. Revercomb* v. *O'Brien,* 141 W. Va. 662, 91 S. E. 2d 865, it "* * * would exceed the judicial function which is to construe laws and not enact them."

This Court has decided the very question involved in the present case when the same question was before it in the case of *State ex rel. Vernet et al.* v. *Wells et al.,* 87 W. Va. 275, 104 S. E. 591, when certificates for nomination were filed after the expiration of the period provided for such filing. In connection with this question this Court said:

"But another proviso requires certificates of such nominations to be filed within [then] twenty days after the primary election for nominations. The primary election was held on the last Tuesday in May, 1920, as required by law. Hence, these certificates were filed more than two months after expiration of the period within which they could have been lawfully filed.

"This limitation upon the right to make nominations is not unreasonable. It allows ample time therefor, and is more liberal than the allowance made to established parties. The board of ballot commissioners have no right to put on any ticket the name of any person not nominated pursuant to law."

It will be noted that the time allowed for such filing of the certificates of nominations was much less than the requirement of the statute at the present time and such requirements are purely a matter for the legislature to determine. The procedure in such matters as is involved in this case is clearly stated in the case of *State ex rel. Battle* v. *Hereford,* 148 W. Va. 97, 103, 133 S. E. 2d 86, wherein the Court said: "This Court has consistently held that a statute which provides for a thing to be done in a particular manner or by a prescribed person or tribunal implies that it shall not be done otherwise or by a different person or tribunal; and the maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies to such statute."

In the case of *State ex rel. Dodrell* v. *Payne et al.,* 87 W. Va. 306, 104 S. E. 733, in connection with this question of filling up the ticket it was stated that: "Obviously the only effect and purpose of the limitation upon the right to exercise the authority so conferred is that, if the vacancy results from the failure to nominate at the primary election a candidate to be voted for at the next general election, when the nomination might and could have been made, the committee must act within the prescribed period of time. It cannot do so afterwards."

In the case at bar the Republican nominee for the Seventh Senatorial District withdrew before the expiration of the time prescribed for the filling of the vacancy. The general law relating to political committees filling vacancies is that the method provided by statute must be followed. See 29 C.J.S., §93, Elections, Filling Vacancies; 25 Am. Jur. 2d, Elections, §137.

The respondents rely on the case of *State ex rel. Zagula* v. *Grossi,* 149 W. Va. 11, 138 S. E. 2d 356, for their contention that the certificate of nomination can be made after the expiration of time required in the statute because of a statement contained therein that an alteration or change of nomination by the committee should be made within a reasonable time before the general election so as not to impede the

printing of the ballots. The issue involved in the *Grossi* case is not related in any manner to the issue involved in the case presented here and the statement relied upon is only a relative statement so far as the issue in that case is involved. The nominations, both the initial nomination by the old committee and the substitute or alteration by the new committee, were well within the time limit prescribed by the statute for such nomination and were some three or four months before the general election.

It is also contended by the respondents that there was a substantial compliance with the statutory requirement and they rely on the case of *State ex rel. Smith* v. *Kelly,* 149 W. Va. 381, 141 S. E. 2d 142, which involved a constitutional amendment for road bonds, of which the notice required to be published in the newspapers was not timely done. It was held in that case that the publication notice was for the purpose of advising the people of the amendment to be voted upon and that although the requirement was mandatory it dealt with procedural matters and had been substantially complied with by public discussions before the election as was shown by the vote of the people. The *Smith* case followed the case of *Herold* v. *Townsend,* 113 W. Va. 319, 169 S. E. 74, to the same effect except in that case by virtue of the action of the legislature relative to the amendment it was impossible to comply with the time requirement for the publication of the notice; and in both cases the vote of the people overwhelmingly approved the amendment. These decisions were by a unanimous Court and the only other similar case was that of *State ex rel. Morgan* v. *O'Brien,* 134 W. Va. 1, 60 S. E. 2d 722, where the notice had not been timely published and the election had not been held approving the amendment at the time the case was submitted to the Court, but it was held that a substantial compliance was all that was required in such cases. This decision was by a divided Court of 3-2.

It may be that if there had been no objections to the filing of the certificates of nomination raised by these mandamus proceedings in these cases and the people had elected

the Republican candidates by popular vote, similar disposition as made in the cases of *State ex rel. Smith* v. *Kelly, supra,* and *Herold* v. *Townsend, supra,* would be justified, because it has been held by some courts that such elections would not be held invalid even where the requirements of the statute are mandatory, since a timely objection to a nomination must be made before the people vote on such candidates. See *Earl* v. *Lewis,* (Utah), 77 P. 235; *Blackmer* v. *Hildreth,* 181 Mass. 29, 63 N. E. 14; 25 Am. Jur. 2d, Elections, §142.

Certainly it can not be contended that the filing of the purported certificates of nomination by the Senatorial District Executive Committees after the time for filing such certificates had expired was a substantial compliance with the statute because it has been clearly held by this Court that it is not in the case of *State ex rel. Vernet et al.* v. *Wells et al., supra,* which has never been overruled and we are not inclined to do so now.

The only way it can be contended that a substantial compliance was attempted would be for the certificates of nomination filed by the Senatorial District Executive Committees to be considered as amended certificates to a valid certificate timely filed. There was no valid certificate filed, so under no stretch of the imagination could the certificate filed by the so-called Senatorial District Executive Committees designated "amended certificate" amend an invalid certificate. It has even been held that where a statute allows an amendment to a certificate of nomination it can not be amended after the time required by the statute for the nomination has expired. *Berry* v. *Gates,* 129 N.J.L. 1, 28 Atl. 2d 59. It is not clear as to the details with regard to the composition of the so-called Senatorial District Executive Committees which were apparently totally appointed by members of the county executive committees in each senatorial district after the time for filing certificates of nomination had expired because if the members of the senatorial district committees in question had ever been elected, which was required by the statute, and had not died or resigned,

or been removed, they are still members of such committee, and no vacancy would be available for filling by appointment by the county executive committee members in the senatorial districts involved. 29 C.J.S., Elections, Filling Vacancies, §93.

For the reasons stated herein, the writ prayed for was granted.

*Writt granted.*