327 S.E.2d 710

A. James MANCHIN, Secretary of State

v.

Bill DUNFEE, et al., etc.

No. 16481.

Supreme Court of Appeals of
West Virginia.

Dec. 6, 1984.
Rehearing Denied Jan. 10, 1985.

Edward Rebrook, III, Sp. Asst. Atty. Gen., Charleston, for appellant.

William T. Watson, Huntington, for appellees.

MILLER, Justice:

This is an appeal by the Secretary of State of West Virginia from the denial of a writ of mandamus by the Circuit Court of Cabell County. At issue is the meaning of a 1983 amendment to our electronic voting statute, W.Va.Code, 3–4A–19a, relating to the signing of ballot cards by the poll clerks. After requiring the ballot cards to be signed by each of the two poll clerks, the statute concludes: ."In the course of an election contest, if it is established that a ballot card does not contain the two signa-

tures required by this section, such ballot card shall be null, void and of no effect, and shall not be counted." [1]

This issue arose when the Cabell County Commission, acting as the Board of Canvassers following the June 5, 1984 primary election, refused to count some 223 ballot cards in the final tabulations because these ballot cards lacked one or both of the poll clerks' signatures. The Secretary of State, as the chief election official, upon learning of this fact filed a petition for a writ of mandamus in the circuit court to require the Board to include the 223 ballot cards in its canvass.

An important fact that appears not to be disputed by the respondents is that the number of ballot cards issued was equal to the number of persons voting. W.Va.Code, 3-4A-19. There was also no claim made of any other irregularities or fraud in connection with the 223 ballot cards.

The circuit court concluded that W.Va. Code, 3-4A-19a, must be read with W.Va. Code, 3-6-7, since they relate to the same subject matter, i.e., they are *in pari materia*. This latter statute deals with irregularities in voting by paper ballot and contains this provision: "Any ballot which is not endorsed with the names of the poll clerks, as provided in this chapter, shall be void." Further argument is made that W.Va.Code, 3-1-34, relating to the general voting procedures by paper ballots at the precinct level, contains the general require-

ment that both poll workers shall sign each ballot.

The electronic voting statute, W.Va. Code, 3-4A-1 through -34, was first enacted in 1969 and was substantially amended in 1982.[2] It is a self-contained statute which encompasses thirty-five sections and deals with all aspects of electronic voting. W.Va.Code, 3-4A-3 through -9, explain how an electronic voting system may be adopted and its specifications. W.Va.Code, 3-4A-11 through -15, outline the ballot requirements, and the instructions of poll workers and others involved in the system. W.Va.Code, 3-4A-16 through -26, describe how the electronic voting devices are to be utilized at the polls and at the central counting center. W.Va.Code, 3-4A-27 through -29, detail how the ballot cards are counted and canvassed and also provide for recount procedures.

▉ W.Va.Code, 3-4A-32, states that: "Except as modified by this article, the general laws applying to regular, special and primary elections shall apply to elections conducted with the use of electronic voting systems." We take this to mean that where a matter exists in the general election law that is not otherwise covered in the electronic voting system statute, such general law is applicable. However, where the electronic voting system statute contains provisions on matters which differ from those covered in our general election law, then the electronic voting statute should control.

---

1. The full text of W.Va.Code, 3-4A-19a, provides:

"Every ballot card utilized during the course of any electronic voting system election conducted under the provisions of this article shall provide two lines for the signatures of the poll clerks. Both of the signature lines shall be printed on a portion of the ballot card where votes are not recorded by perforation or other marking, but which portion is an actual part of the ballot card deposited in the ballot box after the voter has perforated or marked his ballot and after the ballot stub has been removed.

"Each of the two poll clerks shall sign his name on one of the designated lines provided on each ballot card before any ballot card is distributed to a voter. After a voter has signed the pollbook, as required in section

nineteen [§ 3-4A-19] of this article, the two poll clerks shall deliver a ballot card to the voter, which ballot card has been signed by each of the two poll clerks as provided herein.

"In the course of an election contest, if it is established that a ballot card does not contain the two signatures required by this section, such ballot card shall be null, void and of no effect, and shall not be counted."

2. We said in *Ohio County Commission v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183, 186 (1983): "Many of these amendments relate to either new or more detailed provisions for safeguarding the accuracy and performance of the electronic voting system such as setting minimum requirements of the system, inspecting the system, and the checking of its accuracy before using the system on election day." (Footnotes omitted).

The controlling language in W.Va. Code, 3–4A–19a is "[i]n the course of an election contest, if it is established that a ballot card does not contain the two signatures required ... such ballot card shall be null, void and of no effect." The term "election contest" is a technical term in our election law which describes the procedure, set out in W.Va.Code, 3–7–1 through –9, available to a candidate to challenge an election after the canvass and recount have occurred. An election contest is a separate proceeding from a canvass or a recount and is usually pursued following the completion of a requested recount. *State ex rel. Booth v. Board of Ballot Commissioners,* 156 W.Va. 657, 672, 196 S.E.2d 299, 309 (1973); *Duncan v. County Court,* 138 W.Va. 106, 112, 75 S.E.2d 97, 101 (1953); *State ex rel. Bumgardner v. Mills,* 132 W.Va. 580, 593, 53 S.E.2d 416, 426 (1949); *Reynolds v. Board of Canvassers,* 117 W.Va. 770, 773, 188 S.E. 229, 230 (1936).

The term "election contest," as well as the terms "canvass" and "recount," are all technical terms created and utilized by the legislature throughout our election laws. We have traditionally held that technical words used in a statute "will be presumed to have been used in a technical sense and will ordinarily be given their strict meaning." *Wooddell v. Dailey,* 160 W.Va. 65, 68–69, 230 S.E.2d 466, 469 (1976); *see also Lane v. Board of Education,* 147 W.Va. 737, 131 S.E.2d 165 (1963). We have stated consistently that "[t]he Legislature, when it enacts legislation, is presumed to know of its prior enactments." Syllabus Point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953); *see also Marion v. Chandler,* 139 W.Va. 596, 81 S.E.2d 89 (1954); *State v. Jackson,* 120 W.Va. 521, 199 S.E. 876 (1938).

Following these principles, we conclude that in 1983, when the legislature enacted W.Va.Code, 3–4A–19a, it intended that ballot cards used in electronic voting systems are required to be signed by the two poll clerks. It also mandated that the lack of such signatures on ballot cards could be challenged only in an election contest. By selecting the term "election contest," we can only conclude that the legislature meant to preclude a challenge at the canvass and recount. If the legislature had intended otherwise, it could have deleted the initial limiting prepositional phrase in the third paragraph of W.Va.Code, 3–4A–19a, i.e., "[i]n the course of an election contest." [3] The conclusion we have reached in analyzing W.Va.Code, 3–4A–19a, is further supported by the familiar rule stated in *Layne v. Hayes,* 141 W.Va. 289, 297, 90 S.E.2d 270, 275 (1955):

> "In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies."

*See also State v. Underwood,* 168 W.Va. 52, 281 S.E.2d 491, 494 (1981); *Ratcliff v. State Compensation Commissioner,* 146 W.Va. 920, 925, 123 S.E.2d 829, 831 (1962).

Respondents urged successfully below that the rule of *in pari materia* should apply, such that W.Va.Code, 3–6–7, relating to the signing of paper ballots by poll clerks, should be read with W.Va.Code, 3–4A–19a. This rule of statutory construction, like many rules of statutory construction, is venerated more for its utility rather than its clarity. The rule of *in pari materia* [4] means that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975); *see also* Syllabus Point 3, *ACF Industries v. Credithrift of America,* 173 W.Va. 83, 312 S.E.2d 746 (1983); Sylla-

---

**3.** The third paragraph of W.Va.Code, 3–4A–19a, would then read: "If it is established that a ballot card does not contain the two signatures required by this section, such ballot card shall be null, void and of no effect, and shall not be counted." See note 1, *supra,* for the full text of W.Va.Code, 3–4A–19a.

**4.** The Latin phrase *"in pari materia"* means "upon the same matter or subject." Black's Law Dictionary 711 (5th ed. 1979).

bus Point 1, *Newton v. Dailey,* 167 W.Va. 347, 280 S.E.2d 91 (1981). It must be remembered that the rule of *in pari materia* is a rule of statutory construction and is only utilized where there is some ambiguity in a particular statute, as we held in Syllabus Point 1 of *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951):

> "The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous."

*See* Syllabus Point 2, *State v. Jackson,* 145 W.Va. 51, 112 S.E.2d 452 (1960); *Douglass v. Koontz,* 137 W.Va. 345, 361, 71 S.E.2d 319, 329 (1952); *see also* 2A *Sutherland Statutory Construction* § 51.01 (4th ed. 1973).

▆▆▆ Furthermore, to say that because several statutes relate to the same subject, they must always be read *in pari materia* is an oversimplification of the rule. First, it is apparent that what is meant by statutes relating to the same subject matter is an inquiry that is answered by how broadly one defines the phrase "same subject matter." [5] Second, the application of the rule of *in pari materia* may vary depending on how integral the statutes are to each other. The rule is most applicable to those statutes relating to the same subject matter which are passed at the same time or refer to each other or amend each other. A diminished applicability may be found where statutes are self-contained and have been enacted at different periods of time. *See generally* 2A *Sutherland Statutory Construction* § 51.01 (4th ed. 1973). Finally, a related statute cannot be utilized to create doubt in an otherwise clear statute. *See Douglass v. Koontz,* 137 W.Va. 345, 361–62, 71 S.E.2d 319, 328–29 (1952); *see*

*also Heringer v. Rolf,* 287 S.W.2d 149 (Ky. 1956); *Kozak v. Retirement Board of the Firemen's Annuity and Benefit Fund,* 95 Ill.2d 211, 69 Ill.Dec. 177, 447 N.E.2d 394 (1983); *International Brotherhood of Electrical Workers v. Gillen,* 174 N.J.Super. 326, 416 A.2d 446 (1980); *Sinclair v. Dept. of Health and Social Services,* 77 Wis.2d 322, 253 N.W.2d 245 (1977).

Both W.Va.Code, 3–1–34, and W.Va. Code, 3–4A–19, relate to the same general subject matter, i.e., voting procedures at the precinct level. However, it is clear that the first statute relates to voting by paper ballots while the second deals with electronic voting procedures—two different types of voting procedures. Furthermore, W.Va.Code, 3–6–7, relates to ballot irregularities when voting by paper ballots, whereas, W.Va.Code, 3–4A–19a, is confined only to the failure to sign the back of the ballot cards.

▆▆▆ We do not believe that W.Va.Code, 3–6–7, relating to voting by paper ballots or W.Va.Code, 3–1–34, dealing with voting procedures generally,[6] can be read *in pari materia* with the provisions contained in W.Va.Code, 3–4A–19 and –19a, relating to the electronic voting system. As previously explained, W.Va.Code, 3–4A–1 through –34, is a self-contained statute relating exclusively to electronic voting procedures which are considerably different from the procedures involved with paper ballot voting.

One of the chief distinctions between the two systems is that paper ballots are counted at the precincts and it is at this stage that paper ballots which do not have the signatures of the poll clerks are voided. W.Va.Code, 3–6–6 and –7. In an electronic voting system, the ballot cards are not counted at the precinct level, but are taken

---

**5.** In several cases, we have refused to recognize the rule where the statutes relate to different subject matters, as stated in Syllabus Point 5 of *Commercial Credit Corp. v. Citizens National Bank,* 148 W.Va. 198, 133 S.E.2d 720 (1963): "Statutes relating to different subjects are not in pari materia." *See also* Syllabus Point 1, *Atchinson v. Erwin,* 172 W.Va. 8, 302 S.E.2d 78 (1983); Syllabus Point 2, *State ex rel. Miller v. Sencindiver,* 166 W.Va. 355, 275 S.E.2d 10 (1980).

**6.** W.Va.Code, 3–1–34, contains this provision: "When the voter's signature is properly on the pollbook, the two poll clerks shall sign their names in the places indicated on the back of the official ballot and shall deliver the ballot to the voter to be voted by him then without leaving the election room."

to the central counting center for tabulation. W.Va.Code, 3–4A–19 and –27. This latter section contains no requirement that the ballot cards must be individually examined before they are processed. Furthermore, W.Va.Code, 3–4A–28, does not contain any specific requirement for manual counting of ballot cards at a canvass or recount, except under the limited provision set out in W.Va.Code, 3–4A–28(4).[7] *See Ohio County Commission v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983).

 One of the underlying purposes of electronic voting systems is to enhance the speed and accuracy of counting votes. It would run counter to such goals to have the ballot cards manually examined on election evening to determine if they were properly signed by the respective poll clerks.

For the foregoing reasons, we conclude that the circuit court erred in holding that the involved ballot cards could be invalidated by the Board of Canvassers. Its judgment is, therefore, reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

7. W.Va.Code, 3–4A–28(4), provides:

"During the canvass and any requested recount, at least five percent of the precincts shall be chosen at random and the ballot cards cast therein counted manually. The same random selection shall also be counted by the automatic tabulating equipment. If the variance between the random manual count and the automatic tabulating equipment count of the same random ballots, is equal to or greater than one percent, then a manual recount of all ballot cards shall be required. In the course of any recount, if a candidate for an office shall so demand, or if the board of canvassers shall so elect to recount the votes cast for an office, the votes cast for that office in any precinct shall be recounted by manual count."