364 S.E.2d 257

### UNITED STEELWORKERS OF AMERICA, AFL–CIO, CLC, an unincorporated association

v.

### TRI–STATE GREYHOUND PARK, a West Virginia limited partnership; West Virginia Labor Management Relations Board, an agency of the State of West Virginia.

No. 17957.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1987.

James F. Wallington, Charleston, for plaintiff.

Ricklin Brown/Thomas E. Scarr, Charleston, for defendants.

McGRAW, Chief Justice:

This appeal presents the issue of whether circuit courts have jurisdiction, under the Uniform Declaratory Judgments Act, West Virginia Code §§ 55–13–1—16 (1981 Replacement Vol.), to protect statutory rights afforded by the West Virginia Labor–Management Relations Act for the Private Sector, West Virginia Code §§ 21–1A–1—8 (1985 Replacement Vol.), granted the status of the West Virginia Labor–Management Relations Board as a nonentity. The appellant, the United Steelworkers of America, seeking certification as the collective bargaining representative of pari-mutuel employees of the appellee, Tri–State Greyhound Park, requests reversal of an order of the Circuit Court of Kanawha

County dismissing its declaratory judgment action on the ground that it lacked jurisdiction. The Steelworkers also desire appointment of a special master to perform the role of executive secretary of the defunct board in order to conduct a certification election and to investigate its charges of unfair labor practices on the part of Tri-State.

Congress amended the National Labor Relations Act in 1959 to grant discretion to the National Labor Relations Board to decline jurisdiction in labor disputes where effect on commerce is insubstantial. Pub.L. No. 86–257, § 701(a), 73 Stat. 519, 541 (codified at 29 U.S.C. § 164(c)(1) (1982)). Pursuant to this grant, the NLRB promulgated a rule in 1973 which provides that, "The Board will not assert jurisdiction in any proceeding under sections 8, 9, and 10 of the act involving horseracing and dogracing industries." *See* 29 C.F.R. § 103.3 (1987). This position has been sustained upon judicial review. *See, e.g., New York Racing Ass'n, Inc. v. NLRB,* 708 F.2d 46 (2nd Cir.), *cert. denied,* 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256 (1983).

In 1971, the Legislature enacted the West Virginia Labor–Management Relations Act for the Private Sector to supplement the federal act in areas such as those left by jurisdictional abstention on the part of the NLRB. 1971 W.Va.Acts ch. 82. Its provisions are patterned after the federal act, including in the creation of a labor relations board to promote and protect the rights granted thereunder. *See* West Virginia Code §§ 21–1B–1–3 (1985) Replacement Vol.). It further provides, however, that, "nothing contained in this article shall be deemed to preempt, limit or restrict any person in the enforcement or prosecution of any action ... in any court of this State to enforce any legal right or cause of action heretofore or otherwise existing under law." West Virginia Code § 21–1A–6(a) (1985 Replacement Vol.).

It is undisputed that the West Virginia Labor–Management Relations Board is a nonentity, without legislative appropriation or executive appointment of its chairman or executive secretary. It has no offices, no staff, and no ability to perform its statutory duties. A 1987 report by the Legislative Auditor introduced below stated that:

The evaluation did not produce any evidence that the Labor–Management Relations Board has ever been active since its creation. Interviews with the present and past Commissioner of the Department of Labor and one member of the Board revealed that to their knowledge this Board has never met. According to the Legislative Budget Bill, the Board received an appropriation of $38,000.00 for fiscal years 1972 and 1973. However, no appointments were ever made during this time and the funds expired to the General Revenue Fund. We found no evidence where the Board has been funded since fiscal year 1973.

Consequently, the Board could not respond to attempts by the Steelworkers to invoke its jurisdiction in the midst of a labor dispute with Tri–State. It obviously could not conduct a certification election nor investigate charges of unfair labor practices on the part of Tri–State.

Confronted with a nonfunctioning administrative mechanism for the enforcement of rights created by statute, the Steelworkers filed a declaratory judgment action in circuit court, seeking appointment of a special master to conduct a certification election and issuance of a cease and desist order prohibiting the commission of unfair labor practices by Tri–State. Following two separate awards of injunctive relief to Tri–State, in connection with the picketing of its facility by the Steelworkers, the circuit court granted Tri–State's motion to dismiss on the ground that it lacked jurisdiction where primary jurisdiction rested with the defunct Board.

The crux of the disagreement between the parties concerning the jurisdiction of circuit courts under the West Virginia Labor Relations Act for the Private Sector is whether, in light of the status of the Board as a nonentity, a implied cause of action is created. In Syllabus Point 1 of *Hurley v. Allied Chemical Corp.,* 164 W.Va. 268, 262 S.E.2d 757 (1980), this Court adopted the standard enunciated by the United States

Supreme Court in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26, 36–37 (1975), for determination of the existence of an implied cause of action under a statute:

> The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

*See also Jenkins v. J.C. Penney Casualty Ins. Co.,* 167 W.Va. 597, 599–608, 280 S.E.2d 252, 254–258 (1981).

With respect to the first factor, the Steelworkers are unquestionably an intended beneficiary of the West Virginia Labor Relations Act for the Private Sector. The term "labor organization" is defined under the Act to mean "any organization of any kind ... in which employees participate and which exists for the purpose ... of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." West Virginia Code § 21–1A–2(a)(5) (1985 Replacement Vol.). In its petition for certification as representative of the pari-mutuel employees of Tri–State, which the Steelworkers attempted to file with the Board under West Virginia Code § 21–1A–5(c)(1)(A) (1985 Replacement Vol.), it was represented that more than fifty percent of the proposed collective bargaining unit of fifty-three pari-mutuel employees of Tri–State were supportive of its petition and desired its representation, satisfying the threshold requirement for such certification election under NLRB regulations, *see* 29 C.F.R. § 101.18(a) (1987) ("[I]n the absence of special factors the conduct of an election serves no purpose under the statute unless the petitioner has been designat-ed by at least 30 percent of the employees."), which are applicable under West Virginia Code § 21–1A–1(c) (1985 Replacement Vol.), which provides, in relevant part, that "except insofar as the provisions of this article differ from the provisions of [the federal] act, as amended, the decisions of the national labor relations board ... shall be authoritative...."

With respect to the fourth factor, as previously noted, the NLRB has declined jurisdiction in labor disputes involving both the horseracing and dogracing industries, thereby negating any intrusion into an area of federal concern. In an explanatory statement to its promulgation of 29 C.F.R. § 103.3 (1973), the NLRB observed that: (1) states typically exercise extensive control over the horseracing and dogracing industries; (2) employment in these industries is generally part-time, short-term, and sporadic; (3) impact on interstate commerce is minimal; and, (4) few labor disputes arise in these industries. In conclusion, the NLRB stated, "[T]he impact of labor disputes in these industries is insubstantial and does not warrant the Board's exercise of jurisdiction." 38 Fed.Reg. 9537 (1973). Thus, the fourth *Cort* factor is unquestionably satisfied.

With respect to the third factor, it is clear that the stated legislative purpose of the West Virginia Labor Relations Act for the Private Sector will be served by recognition of a private cause of action in the absence of a viable administrative enforcement mechanism. The goal of the Act is stated in West Virginia Code § 21–1A–1(a) (1985 Replacement Vol.):

> It is hereby declared to be the public policy of this State and the purposes of this article to encourage the practice and procedure of collective bargaining by protecting the exercise by employees of full freedom of association, self-organization and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection; to prescribe the legitimate rights of both employees and employers in their relations; to provide orderly and

peaceful procedures for preventing interference by either with the legitimate rights of the other; to protect the rights of individual employees in their relations with labor organizations; to define and prescribe practices on the part of labor and management which are inimical to the welfare, prosperity, health and peace of the people of this State; and to protect the rights of the public in connection with labor disputes.

This broad language evidences a legislative recognition of the need for a comprehensive statutory framework for the promotion of labor-management cooperation to ensure industrial tranquility and to foster an environment conducive to high levels of productivity. In addition to this general statement of public policy, the Legislature expressed specific concern with the rights of employees. West Virginia Code § 21-1A-3 (1985 Replacement Vol.) provides, for example, that, "Employees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...." In the absence of a procedure by which an intended beneficiary can seek enforcement of these rights, labor-management relations rapidly disintegrate into chaos and conflict, with both sides seeking the protection of the judiciary through invocation of its injunctive powers.

With respect to analysis of the second factor, legislative intent, the absence of a viable administrative remedy is critical. As we noted in *Jenkins,* 167 W.Va. at 606, 280 S.E.2d at 257–258:

In those situations where a statute has granted a class of persons certain rights and there is no statutory language indicating that the administrative remedies provided in the statute are to be considered exclusive, the United States Supreme Court has found an implied private cause of action. In Note 41 of *Cannon v. University of Chicago,* 441 U.S. 677, 707, 99 S.Ct. 1946, 1962–63, 60 L.Ed.2d 560, 581 (1979), the Court stated:

"True, this Court has sometimes refused to imply private rights of action where administrative or like remedies are expressly available. [Citations omitted]. But it has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute. See *Rosado v. Wyman,* 397 U.S. [397] 406 n. 8, 90 S.Ct. 1207, 1214, 25 L.Ed.2d 442; cf. *Cort v. Ash, supra,* 422 U.S. [66] at 74–75, 95 S.Ct. [2080] at 2086, [45 L.Ed.2d 26]; *Calhoon v. Harvey. supra* [379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190]...."

Although this Court recognized in *Jenkins, Id.* 167 W.Va. at 605–06, 280 S.E.2d at 257–258, that some administrative enforcement powers had been granted to the insurance commissioner under the statute in question, because those powers were deemed inadequate to protect the rights of injured persons for whose benefit the statute was enacted, we held that the administrative remedies provided were not exclusive.

On at least two other occasions, this Court has held that where existing administrative remedies are inadequate, a cause of action arises by implication for the enforcement of statutory rights. In *Price v. Boone County Ambulance Authority,* 175 W.Va. 676, 337 S.E.2d 913, 916 (1985), this Court stated that because "the administrative remedies and the mechanism for transfer to circuit court provided by statute are at this time inadequate for enforcing the fundamental civil rights granted by our Human Rights Act.... [it] should be construed to give those aggrieved by human rights violations the option to proceed in circuit court, as an alternative to initiating administrative action." Similarly, in *Wiggins v. Eastern Associated Coal Corp.,* 178 W.Va. 63, 357 S.E.2d 745 (1987), where a cause of action for wrongful discharge was recognized despite the availability of administrative complaint procedures under the antidiscrimination provisions of federal and state mine safety laws, this Court held in Syllabus Point 2 that, "Where the avail-

able administrative remedy is inadequate, this Court recognizes an exception to the general rule that where a new right is created by statute, the remedy can be only that which the statute prescribes."

Of course, in the instant proceeding, the administrative remedies provided for the enforcement of the rights granted by the statute are beyond inadequate, they are nonexistent. Moreover, as previously noted, the Legislature provided that, "nothing contained in this article shall be deemed to preempt, limit or restrict any person in the enforcement or presecution of any action ... in any court of this State to enforce *any* legal right or cause of action heretofore or *otherwise* existing...." West Virginia Code § 21–1A–6(a) (1985 Replacement Vol.) [Emphasis added]. One time-honored rule of statutory construction is that, "It is always presumed that the legislature will not enact a meaningless or useless statute." Syl. pt. 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, Veterans of Foreign Wars,* 147 W.Va. 645, 129 S.E.2d 921 (1963); *see also In re Dostert,* 174 W.Va. 258, 324 S.E.2d 402, 413 n. 20 (1984); *City of Huntington v. State Water Commission,* 135 W.Va. 568, 577, 64 S.E.2d 225, 230 (1951); Syl. pt. 2, *Slack v. Jacob,* 8 W.Va. 612 (1875). Unquestionably, in the absence of a viable enforcement mechanism, the West Virginia Labor Relations Act for the Private Sector is a meaningless and useless statute, something we presume the Legislature could not have intended. In *Hurley,* 164 W.Va. at 280, 262 S.E.2d at 764, in its analysis of the second *Cort* factor, this Court concluded, "[T]he absence of an administrative remedy does furnish some indication of legislative intent, as we can assume that the Legislature is aware of the doctrine of implied statutory causes of action. We can also assume that the Legislature would not enact a remedial statute granting rights to an identifiable class without enabling members of that class to enforce those rights." Because we reach a similar conclusion in the instant proceeding, we hold that the circuit court's dismissal for lack of jurisdiction under the West Virginia Labor–Management Relations Act for the Private

Sector was improper. We must now address the procedure by which those for whose benefit this statute was enacted may seek enforcement of the rights created.

An analysis of its provisions reveals that the proper method for invocation of the jurisdiction of circuit courts under the West Virginia Labor–Management Relations Act for the Private Sector is resort to the Uniform Declaratory Judgments Act, West Virginia Code §§ 55–13–1—16 (1981 Replacement Vol.). With respect to the types of proceedings which may be instituted, West Virginia Code § 55–13–1 (1981 Replacement Vol.) provides that, "Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed." As this Court held in Syllabus Point 3 of *West Virginia Utility Contractors Ass'n v. Laidley Field Athletic and Recreation Center Governing Board,* 164 W.Va. 127, 260 S.E.2d 847 (1979), "For purposes of a declaratory judgment action, a justiciable controversy exists when a legal right is claimed by one party and denied by another." *See also Trail v. Hawley,* 163 W.Va. 626, 628, 259 S.E.2d 423, 425 (1979). With respect to standing to institute such proceedings, West Virginia Code § 55–13–2 (1981 Replacement Vol.) provides that, "Any person ... whose rights, status or other legal relations are affected by statute ... may have determined any question of construction ... under the statute ... and obtain a declaration of rights, status or other legal relations thereunder." In addition to the obvious declaration of rights under statute, West Virginia Code § 55–13–8 (1981 Replacement Vol.) also provides that, "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." With respect to parties to be included in such proceedings, West Virginia Code § 55–13–11 (1981 Replacement Vol.) provides that, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall preju-

dice the rights of persons not parties to the proceeding."

Thus, the Uniform Declaratory Judgments Act provides a convenient framework within which to resolve conflicts under the West Virginia Labor-Management Relations Act for the Private Sector. Moreover, the availability of such procedure is consistent with the legislative statement that the Uniform Declaratory Judgments Act "is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to the rights, status and other legal relations; and is to be liberally construed and administered." West Virginia Code § 55–13–12 (1981 Replacement Vol.). Therefore, we hold that circuit courts have jurisdiction, under the Uniform Declaratory Judgments Act, West Virginia Code §§ 55–13–1—16 (1981 Replacement Vol.), to protect the statutory rights afforded by the West Virginia Labor–Management Relations Act for the Private Sector, West Virginia Code §§ 21–1A–1—8 (1985 Replacement Vol.), granted the status of the West Virginia Labor–Management Relations Board as a nonentity.

Without question, administrative enforcement of the rights created under the West Virginia Labor-Management Relations Act for the Private Sector is preferable to judicial enforcement of those rights. Administrative bodies, such as the NLRB, limited in purpose and function, are more readily able to accumulate expertise in complicated areas such as labor law. Administrative bodies, relying upon such accumulated expertise, are able to promulgate prospective rules and regulations, in contrast to the more formalized adjudicatory process. The circuit court in the instant proceeding was understandably hesitant to venture into unfamiliar territory. It stated that, "I'm not really an expert on this. I don't pretend to be. I have never been in one of these things...."

This Court has recognized that equitable principles may be implicated in a declaratory judgment action. *See* Syl. pt. 1, *Dolan v. Hardman*, 126 W.Va. 480, 29 S.E.2d 8 (1944) ("A court of equity having jurisdiction of a cause derived from general equity principles and practice may grant declaratory relief...."). To provide assistance in the exercise of equitable jurisdiction by circuit courts, West Virginia Code § 51–5–1 (1981 Replacement Vol.) provides, in relevant part, that, "Each circuit court ... having jurisdiction to try or hear suits in chancery or actions at law, may from time to time appoint ... commissioners ... who shall be removable at its pleasure, with power to take depositions and to swear and examine witnesses and to certify their testimony." *See also* Rule 53, W.Va. R.Civ.P. (1987). In addition to this statutory basis for reference to a special commissioner or master, it has also been noted that, "The general rule applicable in equitable actions is that even in the absence of a statute authorizing it, a court of equity has inherent power to enter an order of compulsory reference." 66 Am.Jur.2d *References* § 13, at 489 (1973). A circuit court thus has authority, in the context of a declaratory judgment action under the West Virginia Labor–Management Relations Act for the Private Sector, to refer the issues raised in such action to a special commissioner or master, an attorney experienced in the field of labor law, to perform the statutory functions of the West Virginia Labor–Management Relations Board, particularly with respect to the conduct of certification elections and the investigation of complaints of unfair labor practices. The special commissioner or master may be chosen either by the circuit court or by consent of the parties. For example, an earlier certification election at Tri–State involving a different union was conducted by an attorney, experienced in the field of labor law, by consent of the parties.

Obviously, the labor dispute in the instant proceeding has been prolonged by the circuit court's dismissal for want of jurisdiction. Although we agree with Tri–State that to compel its recognition of the Steelworkers, at this point, as the collective bargaining agent for its pari-mutuel employees, would be premature, it would appear, at least at first blush, that a certification election should be conducted. We,

therefore, reverse the judgment of the Circuit Court of Kanawha County that it lacked jurisdiction in a declaratory judgment action under the West Virginia Labor–Management Relations Act for the Private Sector, and remand this proceeding to the Honorable Larry V. Starcher, as Special Judge of the Circuit Court of Kanawha County, for the appointment of a special master, a lawyer experienced in the field of labor law, to perform the statutory duties of the defunct West Virginia Labor–Management Relations Board, particularly with respect to the possible conduct of a certification election and the investigation of complaints of unfair labor practices.

Reversed and remanded.