638 S.E.2d 167

**T. WESTON, INC., Plaintiff**

v.

**MINERAL COUNTY, West Virginia and County Commission of Mineral County, West Virginia, et al., Defendants.**

No. 32890.

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2006.

Decided June 29, 2006.

Dissenting Opinion of Justice Benjamin July 27, 2006.

**566**

Stephen G. Jory, Harry A. Smith, III, Jory & Smith, Elkins; J. Michael Murray, Berkman, Gordon, Murray & DeVan, Cleveland, OH, Pro Hac Vice, for Plaintiff.

J. Robert Russell, James C. Stacy, Pullin, Fowler & Flanagan, Morgantown, for Defendants.

STARCHER, J.:

In this case, we are asked to decide whether a county commission in a county that has created a planning commission under *W.Va. Code*, 8–24–1, *et seq.*[1] may enact an ordinance regulating the location of "exotic entertainment" businesses pursuant to *W.Va.Code*, 7–1–3jj(b) [2002]. We hold that such a county may not do so. We do not address the issue

of whether the county may have such authority under other statutes.

### I.

#### *Facts & Background*

The instant case comes to this Court on a certified question from the United States District Court for the Northern District of West Virginia, arising from a suit filed by T. Weston, Inc., d/b/a Ridgeley Saloon ("Weston"), an operator of an "exotic entertainment" business. Weston filed suit in the District Court against Mineral County, West Virginia, the Mineral County Commission, the Mineral County Sheriff and three Sheriff's Deputies, and the Mineral County Prosecuting Attorney. The suit alleged that Mineral County was improperly seeking to restrict or terminate Weston's business operations.

The following facts appear to be undisputed. In November 2002, acting on the recommendation of the Mineral County Planning Commission, the Mineral County Commission passed an ordinance regulating several aspects of exotic entertainment businesses in Mineral County. In the text of the ordinance, Mineral County cited *W.Va.Code*, 7–1–3jj [2002] as its authority for enacting the ordinance.[2]

*W.Va.Code*, 7–1–3jj [2002] states:

(a) For the purposes of this section:

(1) "Exotic entertainment" means live entertainment, dancing or other services conducted by persons while nude or semi-nude in a commercial setting or for profit.

(2) "Seminude" means the appearance of:

(A) The female breast below a horizontal line across the top of the areola at its highest point, including the entire lower portion of the human female breast, but does not include any portion of the cleavage of the human female breast exhibited

<hr />

**1.** The West Virginia Legislature repealed *W.Va. Code*, 8–24–1 through 8–24–85, effective June 11, 2004, and further repealed *W.Va.Code*, 8–24–86 and 8–24–87, effective April 8, 2005. This area of law was recodified by a similar set of statutes found in *W.Va.Code*, 8A–1–1 [2004], *et seq.* Our

references to *W.Va.Code*, 8–24–1, *et seq.* herein incorporate this understanding.

**2.** *W.Va.Code*, 7–1–3jj(b) [2002] is the only statutory authority cited by Mineral County in the ordinance.

by a dress, blouse, skirt, leotard, bathing suit or other wearing apparel provided the areola is not exposed, in whole or in part;

(B) A human bare buttock, anus, anal cleft or cleavage, pubic area, male genitals, female genitals or vulva, with less that a fully opaque covering; or

(C) A human male genital in a discernibly turgid state even if completely and opaquely covered.

(b) *In the event a county has not created or designated a planning commission pursuant to the provisions of article twenty-four, chapter eight of this code, a county commission may, by order entered of record, adopt an ordinance that limits the areas of the county in which a business may offer "exotic entertainment" as that* term is defined in subsection (a) of this section. Any such ordinance shall be subject to the provisions of section fifty, article twenty-four, chapter eight of this code: Provided, That in the event of the partial or total loss of any existing business structure due to fire, flood, accident or any other unforeseen act, that business structure may be repaired or replaced and the business use of that structure may continue notwithstanding the existence of any ordinance authorized by this section. Any such repair or replacement will be limited to restoring or replacing the damaged or lost structure with one reasonably similar, or smaller, in size as measured in square footage, and any enlargement of the business structure will subject the structure to any existing ordinance authorized by this section. Notwithstanding any other provision of this code to the contrary, no ordinance enacted pursuant to the provisions of this section may apply to or affect any municipal corporation that either: (1) Has adopted and has in effect an ordinance restricting the location of exotic entertainment or substantially similar businesses pursuant to the authority granted in articles twelve or twenty-four, chapter eight of this code; or (2) adopts an ordinance to exempt itself from any county ordinance enacted pursuant to this section.

(c) Any person adversely affected by an ordinance enacted pursuant to the authority granted in subsection (b) of this section is entitled to seek direct judicial review with regard to whether the ordinance impermissibly burdens his or her right to establish a business offering exotic entertainment

(Emphasis added.)

Mineral County's ordinance at issue in the instant case exempted businesses that existed prior to the ordinance's passage from the ordinance's location provisions. Weston's establishment existed prior to the passage of the ordinance. Mineral County's ordinance also required an annual application for a permit and an application fee for all businesses providing exotic entertainment, and prohibited anyone under the age of twenty-one from being on the premises of an establishment providing exotic entertainment.

On May 6, 2004, alleging that Weston had admitted persons under twenty-one to its exotic entertainment business establishment, the Mineral County Prosecuting Attorney wrote a letter to Weston, stating that " . . . you must stop all exotic entertainment immediately. Failure to do so will result in criminal charges being filed against you . . . . " [3] Weston subsequently filed suit in federal court, challenging both the substantive constitutionality of Mineral County's ordinance, and Mineral County's authority under West Virginia law to enact such an ordinance.

The District Court thereafter certified the following question of law to this Court:

Is a county commission, which has created a planning commission pursuant to Chapter 8, Article 24 of the West Virginia Code, precluded from adopting a county ordinance limiting the areas of the county in which a business may offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code?

II.

*Standard of Review*

■ "A de novo standard is applied by this Court in addressing the legal issues present-

---

**3.** The Prosecuting Attorney's letter resulted from a "sting" operation, in which two undercover sheriff's deputies accompanied two twenty-year-olds into Weston's establishment.

ed by a certified question from a federal district or appellate court." Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998).

## III.

### Discussion

■ The certified question from the District Court asks this Court to determine the meaning of a statute. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970).[4]

■ "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). It is presumed that each word in a statute has a definite meaning and purpose. *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979). "It is always presumed that the legislature will not enact a meaningless or useless statute." Syllabus Point 3, *United Steelworkers of America, AFL–CIO, CLC v. Tri–State Greyhound Park*, 178 W.Va. 729, 364 S.E.2d 257 (1987) (citing Syllabus Point 4, *State ex rel. Hardesty v. Aracoma–Chief Logan No. 4523, V.F.W.*, 147 W.Va. 645, 129 S.E.2d 921 (1963)). Courts should favor the plain and obvious meaning of a statute as opposed to a narrow or strained construction. *Thompson v. Chesapeake & O. Ry. Co.*, 76 F.Supp. 304, 307–308 (S.D.W.Va.1948). The fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning. *Deller v. Naymick*, 176 W.Va. 108, 112, 342 S.E.2d 73, 77 (1985) (citing *Estate of Resseger v. Battle*, 152 W.Va. 216, 220, 161 S.E.2d 257, 260 (1968)).

■ Looking to the statute in question, *W.Va.Code*, 7–1–3jj(b) [2002] states that "[i]n the event a county has not created or designated a planning commission ..., a county commission may ... adopt an ordinance that limits the areas of the county in which a business may offer 'exotic entertainment' ...."

■ Mineral County argues that *W.Va. Code*, 7–1–3jj(b) [2002] does not have a limiting effect on the authority of counties that *have* a planning commission to enact ordinances of the type authorized by *W.Va.Code*, 7–1–3jj(b) [2002]. However, "[w]here a statute provides for a thing to be done in a particular manner *or by a prescribed person or tribunal* it is implied that it shall not be done otherwise or by a different person or tribunal." Syllabus Point 1, *Brady v. Hechler*, 176 W.Va. 570, 346 S.E.2d 546 (1986) (quoting Syllabus Point 3, *State ex rel. Baker v. Bailey*, 152 W.Va. 400, 163 S.E.2d 873 (1968)) (emphasis added).

■ "[T]he familiar maxim *expressio unius est exclusio alterius* [means] the express mention of one thing implies the exclusion of another ...." Syllabus Point 3, in part, *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984). In the instant case, in *W.Va. Code* 7–1–3jj(b) [2002], the statute's express mention of counties that have not created planning commissions clearly implies the exclusion of counties that have created planning commissions.

■ To accept Mineral County's argument would render the limiting words of *W.Va.Code*, 7–1–3jj(b) [2002] meaningless. "[N]o part of a statute is to be treated as meaningless and we must give significance and effect to every section, clause, word or part of a statute ...." *Mitchell v. City of Wheeling*, 202 W.Va. 85, 88, 502 S.E.2d 182, 185 (1998) (citing *State v. General Daniel Morgan Post No. 548*, 144 W.Va. 137, 107

---

4. It has been said that courts can use the multifarious rules of statutory construction to reach virtually any conclusion. *See* Robert J. Martineau, *Craft and Technique, Not Canons and Grand Theories: A Neo-Realist View of Statutory Construction*, 62 Geo. Wash. L.Rev. 1, 5 (1993). Nevertheless, "[w]hen a statute is clear and un-

ambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

S.E.2d 353 (1959); *Wilson v. Hix*, 136 W.Va. 59, 65 S.E.2d 717 (1951)).

■ Additionally,

[t]he county [commission] is a corporation created by statute, and possessed only of such powers as are expressly conferred by the Constitution and legislature, together with such as are reasonably and necessarily implied in the full and proper exercise of the powers so expressly given. It can do only such things as are authorized by law, and in the mode prescribed.

Syllabus Point 3, *Barbor v. County Court of Mercer County*, 85 W.Va. 359, 101 S.E. 721 (1920).

Mineral County's argument that the words of limitation ("In the event a county has not created or designated a planning commission...") that begin *W.Va.Code*, 7–1–3jj(b) [2002] are of no significance is simply not persuasive.

Mineral County also argues that even if *W.Va.Code*, 7–1–3jj(b) [2002] does not provide authority for its ordinance, *W.Va.Code*, 8–24–1, *et seq.* granted the County Commission the power to enact the ordinance. Mineral County argues that *W.Va.Code*, 8–24–1, *et seq.* provided a general authorization for counties with planning commissions to enact zoning ordinances for all land uses, including exotic entertainment businesses. Responding to this argument, Weston says that assuming, *arguendo*, that Mineral County did not rely on *W.Va.Code*, 7–1–3jj(b) [2002] to enact the ordinance in question, the ordinance is nevertheless invalid. Weston argues that Mineral County did not have the authority pursuant to *W.Va.Code*, 8–24–1, *et seq.* to enact the ordinance in question.

We decline to address this issue. The District Court has certified a narrow question of state law to this Court, requesting the Court's interpretation of the meaning of *W.Va.Code* 7–1–3jj(b) [2002]. We were not asked to give meaning to any other statutes, nor do we have an adequate record or basis to address speculative and complex questions regarding issues collateral to the certified question.

IV.

*Conclusion*

We hold that a county commission that has created a planning commission pursuant to *W.Va.Code*, 8–24–1, *et seq.* does not have authority under *W.Va.Code*, 7–1–3jj(b) [2002] to adopt a county ordinance limiting the areas of the county in which a business may offer exotic entertainment.

Therefore, we answer the District Court's certified question:

Is a county commission, which has created a planning commission pursuant to Chapter 8, Article 24 of the West Virginia Code, precluded from adopting a county ordinance limiting the areas of the county in which a business may offer exotic entertainment pursuant to Chapter 7, Article 1, Section 3jj(b) of the Code?

Answer: Yes.

Certified Question Answered.

BENJAMIN, Justice, dissenting.

(Filed July 27, 2006)

I dissent to the majority's decision to read into W.Va.Code 7–1–3jj(b) (2002) language which simply is not there. While I commend my fellow justices for their restraint in narrowly responding to the certified question herein,[1] I cannot agree that the prohibition which the majority now chooses to imply into W.Va.Code 7–1–3jj(b) was the intent of the Legislature where such prohibition is plainly not present in the statutory language, where there is no hint in the title of the bill which gave rise to this statutory language that there is any restriction on the authorization given to counties to enact ordinances such as at issue in this matter, where such a restriction is not evident from the context of the statute, where the plain wording of the statute is permissive not prohibitive, and, most importantly, where the express statutory language limits its applicability to counties *without* planning commissions, not counties *with* planning commissions as is present in this

---

1. The majority opinion correctly observes that a county's authority to act is not dependent upon

W.Va.Code 7–1–3jj(b) (2002) alone, and may exist elsewhere in West Virginia law.

matter. There is no ambiguity in the statutory language of this statute. By its terms, it is a permissive statute.

The Legislature chose its words carefully. W.Va.Code 7-1-3jj(b) (2002) reads, "In the event a county has *not* created ... a planning commission ..., a county commission *may* ...". [Emphasis added.] The majority decision now effectively has rewritten the statute to read, "In the event a county *has* created ... a planning commission ..., a county commission *may not* ...". In doing so, the majority decision, under the banner of statutory interpretation, has now turned a permissive statute into a prohibitive statute.

I would answer the certified question in the negative. W.Va.Code 7-1-3jj(b) is, in my opinion, only relevant to situations where a county has not created a planning commission. From its plain wording, it is not applicable to situations, as here, where a county has created a planning commission.